IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

*******************************

**UNITED STATES OF AMERICA**          Criminal No.:  5:16-cr-00264 (DNH)

v.

**CHRISTOPHER M. SWARTZ,**

**Defendant.**

*******************************

## MOTION FOR INTERLOCUTORY SALE OF PROPERTY

The United States of America, by its counsel, hereby moves pursuant to Rule 32.2(b)(7) of the Federal Rules of Criminal Procedure, that the court order an interlocutory public judicial sale of property subject to forfeiture in this criminal case, namely, the franchisor corporate business doing business as Jreck Subs (hereafter "the Asset").  In support of its motion, the Government says the following:

**I.      Facts**

As set forth in the criminal Information, his guilty plea, and the Government's sentencing submissions, Christopher Swartz was a food and restaurant entrepreneur and franchisor residing in Watertown, New York.  He held numerous interests in food and restaurant concepts and franchises since at least 1996, including submarine sandwich chains, hamburger chains, and other franchises. At the center of his controlling interests was Jreck Subs, a popular New York-based sandwich chain with over 40 stores in central and upstate New York.

An extensive federal grand jury investigation uncovered substantial evidence that Swartz committed federal offenses including wire fraud and tax evasion – often times using the good reputation and success of the Jreck Subs franchise to lure investors.

As a result, the Government sought criminal charges, to which Swartz agreed to plead guilty on September 19, 2016.  In Count One, Swartz was charged with committing wire fraud in violation of 18 U.S.C. § 1343 based upon a decade-long scheme to defraud creditors and investors. Specifically, from in or about 2005 through in or about September 2015, Swartz, using promissory notes to obtain money and property from lenders and investors, executed a scheme and plan to defraud lenders and investors in his food and restaurant franchises and concepts by means of false and fraudulent pretenses, representations, and promises, including:

(1) inducing lenders/investors into giving him funds by: (i) false and fraudulent promises to repay them, and at high interest rates; (ii) fraudulent promises of collateral and security, including personal guarantees; (iii) false and fraudulent representations concerning how the funds would be spent; and (iv) giving lenders and investors "stock kickers" and equity interests in the businesses, and, thus, a purported share of the assets and funds held therein;

(2) misappropriating and diverting lender/investor funds, as well as funds of the businesses;

(3) lulling the lenders/investors in order to keep them at bay, to convey a false sense of security, and to discourage them from taking action against him and his entities, by: (i) making limited payments to the lenders/investors, including many checks that he knew would "bounce" due to insufficient funds, hoping to convince lenders that he intended to repay in full; (ii) providing false and fraudulent excuses for non-payment; and (iii) providing false and fraudulent assurances and representations regarding repayment; and

(4) concealing and disguising his assets and income from lenders and investors to prevent their recovery of their funds.

Swartz was also convicted, in Count Two of the Information, for tax evasion pursuant to 26 U.S.C. § 7201.  From in or about 2005 through in or about May 2015, while simultaneously engaging in a scheme to defraud the promissory note lenders and investors, Swartz executed a

scheme to obstruct the IRS and evade taxes with respect to his personal income taxes and business employment taxes through multiple acts of deceit and concealment.

On July 12, 2017, the Court, after extensive briefing and review of the facts in this case, sentenced the defendant to 150 months of imprisonment, and ordered him to pay $21,041,249 in restitution to his wire fraud victims, and $4,619,340 in restitution to the IRS as a result of his tax fraud.

On September 23, 2016, the Court, after Swartz's guilty plea, entered a preliminary order of forfeiture ("POF"). The Court ordered forfeiture, as proceeds of the offense charged in Count One, of "any and all interests of the defendant in the franchisor corporate business doing business as Jreck Subs in Watertown, New York." ECF Doc. 9 (POF ¶ 1a). An amended preliminary order of forfeiture ("APOF"), filed August 4, 2017, reaffirmed the forfeiture order as to the franchise, and also included a forfeiture money judgment, in an amount certain ordered at sentencing, totaling $12,535,400. ECF Doc. 66 (APOF).

Accordingly, the forfeiture asset at issue is the Jreck Subs franchise rights, trademarks, and other intellectual property related to the brand (the "Asset").

The Asset is currently being operated by Individual P.W. under a management and consulting contract with the U.S. Marshal's Service. Individual P.W., a franchisee himself with years of experience working for and with the Jreck Subs franchise, has been in his current position managing the franchise business since June 7, 2017. P.W.'s contract will end on June 7, 2018. It is uncertain whether he will agree to continue on and renew the contract. As well, while the Asset's value has been preserved and operations stabilized since the U.S. Marshal's Service took control of the business from Swartz and his co-conspirators, the failure to resolve future ownership potentially jeopardizes the value of the Asset given the uncertainty among individual franchisee

owners and their willingness to renew franchise contracts. Additionally, the Asset does not currently hold a Federal Disclosure Document ("FDD"), required by the State of New York, and it is impractical to pursue obtaining the FDD since the FDD is not transferable to any new owner. The inability of the Asset to hold a FDD is pertinent to this application because it creates an unsustainable environment for the business to continue to operate profitably, and prevents the Asset from being able to sell new franchises. The Asset is also losing income as franchisee stores continue to close due to poor sales and other mitigating factors.

All known potential claimants received notice of the action, publication of the action, and the time to file claims/petitions has expired. Four separate petitions were filed claiming ownership interest in the asset. The Asset is currently the subject of forfeiture litigation, with four separate petitions challenging the Government's interest in the ancillary proceedings. Final resolution of said litigation may not be for several additional months.

Accordingly, the Government is seeking the approval of the court to convert the Asset to cash by way of interlocutory sale. The U.S. Marshal's Service has been contacted by approximately 7 to 10 potential buyers.

## II. Authority for Interlocutory Sale

When certain conditions are present, the court has authority under the following procedural rules and statutory provisions to order an interlocutory sale of property that is subject to criminal forfeiture prior to a final adjudication on the Government's forfeiture action.

Rule G(7)(b) of the Supplemental rules for Admiralty or Maritime Claims and Assert Forfeiture Actions, as incorporated by Rule 32.2 (b)(7) of the Federal Rules of Criminal Procedure provides:

(a) Interlocutory Sale or Delivery

      (i) Order to Sell.  On motion by a party or a person having custody of the property, the court may order all or part of the property sold if:

           (A) the property is perishable or at risk of deterioration, decay, or injury by being detained in custody pending the action;

           (B) the expense of keeping the property is excessive or is disproportionate to its fair market value;

           (C) the property is subject to a mortgage or to taxes on which the owner is in default; or

           (D) the court finds other good cause.

      (ii) Who Makes the Sale.  A sale must be made by a United States agency that has authority to sell the property, by the agency's contractor, or by any person the court designates.

      (iii) Sale Procedures.  The sale is governed by 28 U.S.C. §§ 2001, 2002, and 2004, unless all parties, with the court's approval, agree to the sale, aspects of the sale, or different procedures.

      (iv) Sale Proceeds. Sale proceeds are a substitute res subject to forfeiture in place of the property that was sold. The proceeds must be held in an interest-bearing account maintained by the United States pending the conclusion of the forfeiture action.

      (v) Delivery on a Claimant's Motion.  The court may order that the property be delivered to the claimant pending the conclusion of the action if the claimant shows circumstances that would permit sale under Rule G(7)(b)(i) and gives security under these rules.

      (vi) Disposing of Forfeited Property.  Upon entry of a forfeiture judgment, the property or proceeds from selling the property must be disposed of as provided by law.

Title 21 United States Code, Section 853(g), which applies in all criminal forfeitures, provides that —

      Following the entry of [a preliminary order of forfeiture]…, the court may, upon application of the United States, enter such appropriate restraining orders or injunctions, require the execution of satisfactory performance bonds…or take any other action to protect the interest of the United States in the property ordered forfeited….

### III. An Interlocutory Sale is Necessary

A court ordered interlocutory public judicial sale of the Asset, pursuant to the provisions cited above, is necessary and justified. In this case, the Government is in possession and is operating the Jreck Subs Franchise, the Asset, through a contractor whose historical knowledge and expertise in running the franchise may no longer be available after his contract ends on June 7, 2018. Moreover, the continuing uncertainty in future ownership is inhibiting potential expansion, as well as risking future operations with existing franchisee store owners who face uncertainty about future ownership and, thus, whether they should renew their franchise contracts. Conversion of the Asset to cash, while placing clean title to the Asset into the hands of new owners untethered to and at arms-length from Swartz and his co-conspirators, will preserve the value of the Asset for the benefit of the Government or, as the case may be, the petitioners should they prevail in the ancillary proceeding.

Because the forfeiture ancillary proceedings are unlikely to be resolved for at least several more months, it would be in the interests of justice for the Court to order the interlocutory sale of the Asset to resolve the uncertainty of ownership and allow the business, and its franchisee owners, to plan and pursue profitable opportunities.

### IV. Judicial Sales Procedure

If a court orders an interlocutory sale of property over the objection of any interested party, the sale must comply with the provisions of 28 U.S.C. §§ 2001 and 2002. While sections 2001 and 2002 apply to the sale of real property, section 2004 makes those procedures applicable to the sale of personal property. These statutes provide procedural safeguards to ensure that court-ordered sales are made on terms that best preserve the parties' interests. Section 2001(a) authorizes public sales of property and sales by court-appointed receivers. Section 2001(b) permits private sales of

property for cash or other consideration after a hearing of which notice to all interested parties shall be given by publication, or as otherwise directed by the court, and after the court finds that the best interests of the estate will be conserved thereby.

By this motion, the United States is requesting authorization to proceed with a public sale of the Property. Based upon the reasons set forth herein, a prompt sale of the Property by the USMS is in the best interests of all parties. Section 2001(a) provides that a public sale of property ordered by any court of the United States shall be sold as a whole or in separate parcels at the courthouse of the county, parish, or city in which the greater part of the property is located, or upon the premises or some parcel thereof located therein. Such sale shall be upon such terms and conditions as the court directs.

Notice of the public sale must be published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district wherein the realty is situated. 28 U.S.C. § 2002. If the property is situated in more than one county, state, district, or circuit, the notice must be published in one or more of the counties, states, or districts wherein it is situated, as the court directs. The notice shall contain a description of the property by referent or otherwise and be substantially in such form as the court approves. Id.

The Government requests that the Court order that the Property be sold in the following manner:

1) The United States Marshals Service (hereinafter "the responsible agency"), shall market, sell and dispose of the subject business interest, through any reasonable commercial method, without further order of the Court.

2) The subject business interest shall be sold for the best and highest market price reasonably obtainable.

3) The responsible agency, in accordance with the appropriate statutes, shall be reimbursed from the sale proceeds of the subject business interest for all necessary costs and expenses incurred in the seizure, maintenance and/or sale of the subject business interest, including the employment of any professionals. The proceeds remaining after the reimbursement of the necessary costs and expenses will be considered the "net proceeds" of the sale.

4) The net proceeds from the sale shall be held by the responsible agency, pending further order of the Court.

5) The net proceeds shall be substituted for the interest of the defendant in the Asset being sought in forfeiture, with any unresolved claims of interest attaching to the proceeds derived from the specific interest in question. The jurisdiction of the Court shall be transferred from the business interest to the net proceeds.

6) The United States shall provide such supervision as is warranted, of the subject business interest, until the interest is sold pursuant hereto.

7) The responsible agency, without further order of the Court, are authorized, pursuant to the applicable laws, to execute documents, to transfer title and to otherwise effect the transfer of all rights, title and interest to the identified assets to any purchaser thereof.

As required by section 2002, the Government has attached to this motion a proposed Notice of Interlocutory Public Judicial Sale Pursuant to 28 U.S.C. § 2002, for publication in the Central New York Business Journal, a newspaper regularly issued and of general circulation covering a 16-county area of Central New York, including Syracuse, Binghamton, Ithaca, Utica-Rome, and Watertown. The notice contains a description of the Property and the terms and conditions of the

sale. The Government hereby requests that the Court approve the attached notice and that it be published in the above-referenced newspaper.

WHEREFORE, the United States moves that the Court enter an Order granting its motion for an interlocutory sale pursuant to Rule 32.2(b)(7).

Date:   May 9, 2018  			Respectfully submitted,

							GRANT C. JAQUITH
							United States Attorney

					By:	*/s/Tamara Thomson*
							TAMARA THOMSON
							Assistant U.S. Attorney
							Bar Roll No.: 515310


					By:	*/s/John N. Kane Jr.*
							JOHN N. KANE, JR.
							Assistant Chief
							United States Department of Justice
							Tax Division, Northern Criminal Enforcement
							Bar Roll No.:  515130