## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

*********************************

**UNITED STATES OF AMERICA**          Criminal No.:  5:16-cr-00264 (DNH)

          **v.**

**CHRISTOPHER M. SWARTZ,**

          **Defendant.**

*********************************

## <u>THE GOVERNMENT'S MOTION TO DISMISS AS TO ORIENTA INVESTORS, AND TO STAY DISCOVERY</u>

GRANT C. JAQUITH
Acting United States Attorney

TAMARA THOMSON
Assistant U.S. Attorney
Bar Roll No.: 515310

JOHN N. KANE, JR.
Assistant Chief
U.S. Department of Justice, Tax Division
Northern Criminal Enforcement Section
Bar Roll No.:  515130

CLIFFORD R.R. KRIEGER
Special Assistant United States Attorney
Northern District of New York
Associate General Counsel
United States Marshals Service
Virginia Bar No.:  51044

## <u>TABLE OF CONTENTS</u>

**PRELIMINARY STATEMENT AND BRIEF CONCLUSIONS** ........................................... 1

**PROCEDURAL BACKGROUND** ........................................................ 4

**FACTUAL BACKGROUND** ...................................................... 7

   I.  SWARTZ'S WIRE FRAUD SCHEME BEGAN AT LEAST BY 2002 ........................ 7

   II. SWARTZ OBTAINED, AND RETAINED, THE ASSET AS PROCEEDS OF HIS
     FRAUD SCHEME AS OF 2002 .................................................... 8

     a.  2002: Swartz's Misappropriation of Jreck Subs ................................. 8

     b.  December 2005:  Swartz's Fraudulent Transfer of the Asset to the SFT ..................... 10

     c.  2009 – December 2011:  The Holding Capital Deal .................................. 11

     d.  December 2011:  Renaming To Focus Franchising Company LLC ...................... 12

     e.  May 2012: The Orienta Buyout ............................................... 12

     f.  March 2013: Creation of Focus Franchising Inc. in Florida............................. 13

     g.  2015-2016: Fraudulent Attempt to Take Jrecks Public ............................... 13

        1.  February 2015: Transfer of the Asset To Focus Franchising Inc. ...................... 13

        2.  May 2015: Transfer of Focus Franchising Inc. to NSUB ........................... 14

        3.  March 2016: Unwinding of NSUB ............................................ 14

**ARGUMENT** .................................................................. 15

   I. LEGAL STANDARDS ........................................................ 15

     a.  Applicable Forfeiture Law .................................................. 15

     b.  Standard for Motion to Dismiss ............................................. 16

   II.  ORIENTA HAS NOT ALLEGED A PLAUSIBLE CLAIM THAT ITS INTEREST
     VESTED PRIOR TO THE GOVERNMENT'S INTEREST PURSUANT TO
     SECTION 853(n)(6)(A) ....................................................... 17

   III. ORIENTA HAS NOT ALLEGED IN ITS PETITION THAT IT IS A BONA FIDE
     PURCHASER WITHOUT KNOWLEDGE THAT THE ASSET WAS SUBJECT TO
     FORFEITURE .............................................................. 22

   IV. ORIENTA HAS NO STANDING TO ASSERT AN EQUITY INTEREST IN THE
     ASSET ................................................................... 23

**CONCLUSION** .............................................................. 25

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

*******************************

**UNITED STATES OF AMERICA**          Criminal No.:  5:16-cr-00264 (DNH)

       **v.**

**CHRISTOPHER M. SWARTZ,**

       **Defendant.**

*******************************

### THE GOVERNMENT'S MOTION TO DISMISSAS TO ORIENTA INVESTORS, AND TO STAY DISCOVERY

### PRELIMINARY STATEMENT AND BRIEF CONCLUSIONS

Upon further review of the Petition by Orienta Investors, LLC ("Orienta") (Dkt. No. 43),[1]

the Court's Preliminary Forfeiture Order (Dkt. No. 66), the Court's rulings and the voluminous

record in support of the criminal prosecution and sentencing (Dkt. Nos. 2, 3, 36, 37, 49, 51, 52,

176), the Court's order dismissing the claims of other third-party petitioners, *see United States v.*

*Swartz,* 391 F.Supp.3d 199 (N.D.N.Y. 2019); Dkt No. 187, and the overbroad, unduly burdensome,

vague and irrelevant discovery that Orienta seeks that will substantially delay recovery to the 150

---

[1]      The operative Petition is Docket 43.  Orienta filed a second petition to address the claims of other petitioners following the filing of the amended preliminary order of forfeiture.  Dkt. No. 83.  In that Petition, Orienta advanced the same claim of ownership and basis of ownership pursuant to 21 U.S.C. § 853(n)(6)(A).  The only material difference between the first Petition and the second Petition is that in the second petition, Orienta addressed the claim advanced by Change Capital.  The Government's successful argument that Swartz Family Trust was time barred on filing a claim based on the Amended Preliminary Order of Forfeiture is equally applicable to Orienta's second Petition.  Dkt. No. 187 at 18-20.

(continued...)

victims Swartz financially harmed, the United States hereby files its motion to dismiss Orienta's claim.

A third party claiming a legal ownership interest in a forfeitable asset during the ancillary proceeding can only prevail if it pleads and proves grounds for relief on either one of two grounds: (1) it has a legal interest in the property, and that such right preceded any vested interest of the defendant and Government;[2] or (2) that it was a *bona fide* purchaser for value "reasonably without cause to believe" the property was subject to forfeiture.  21 U.S.C. § 853(n)(6)(A), (B).

Orienta claims <u>two</u> distinct legal interests in the Jreck Subs Franchise rights (the "Asset"): (1) a 35 percent <u>equity</u> interest; and (2) a secured <u>debt</u> interest after extending a loan.  The bulk of both interests were purchased on May 9, 2012, when Orienta bought out the HCG Investors' interest in the Asset after Defendant Swartz defrauded HCG.[3]

Orienta's purported legal interests in the Asset, equity and debt, must now fail due to at least <u>three</u> pleading deficiencies:

(1)     Orienta has not pleaded, and cannot establish, facts showing that either its equity or debt interests are superior to the Government's.  Even if the Court assumes Orienta's interests vested in January 2009[4], the Government's interests vested at least as early as 2002 when the "acts that gave rise to the forfeiture" occurred, namely when Swartz's scheme to defraud began

---

[2]     In fact, the statutory language is that the claimant must have an interest superior to that of the <u>defendant</u>, however the Government stands into the shoes of the defendant after his interest is forfeited.  *United States v. O'Dell*, 247 F.3d 655, 685 (6th Cir. 2001) ("that the government merely steps into the Defendant's shoes is not debatable").

[3]     Orienta claims that it purchased a 30 percent equity interest on May 9, 2012, and that it purchased an additional 5 percent stake on May 9, 2013.  Dkt. No. 43 ¶¶ 4, 7.

[4]     *See* Argument, Section II, *infra*.

and when he obtained the Asset as proceeds of his scheme. *See United States v. Swartz,* 391 F.Supp.3d at 212-213, Dkt. No. 187 at 21 (it is "conclusively" established Swartz's wire fraud scheme began in 2002; Asset was proceeds by 2005);

      (2)    Orienta cannot succeed in the ancillary proceeding on the only other ground available under 21 U.S.C. §853(n), as a *bona fide* purchaser for value ("BFP") without reasonable cause to know of the forfeitability of the Asset. Se̱e 21 U.S.C. § 853(n)(6)(B). Orienta, in its Petition, makes no such allegation. *See* Dkt. Nos. 43. Petitioners in the ancillary proceeding must plead the ground upon which they seek relief within thirty days of publication of notice or receipt of direct notice, whichever is earlier. 21 U.S.C. § 853(n)(2) & (3). Orienta pleaded that its interest was superior under section 853(n)(6)(A), not that it was a BFP pursuant to section 853(n)(6)(B). Se̱e Dkt. Nos. 43. Once the thirty days for filing have expired, petitioners are not permitted to amend their petitions to assert new grounds for relief, *e.g., United States v. Soreide,* 461 F.3d 1351, 1355 (11th Cir. 2006); and

      (3)    Claimant's equity interest must fail because Orienta's sworn petition asserts facts admitting it is not an owner of the Asset and, therefore, it has no standing to assert its equity interest. *See, e.g.,* Stefan D. Cassella, Asset Forfeiture in the United States § 23-13(d)("Because they lack any ownership interest in the assets of the corporation, shareholders do not have standing to challenge the forfeiture of corporate assets."); *see also United States v. All Funds in the Account of Prop. Futures, Inc.,* 820 F. Supp. 2d 1305, 1326 (S.D. Fla. 2011) (*citing United States v. New Silver Palace Restaurant, Inc.,* 810 F. Supp. 440,443 (E.D.N.Y. 1992)). Orienta's equity claim asserts legal title in a holding company, which in turn owns another company, which in turn purportedly owns the Asset. As such, Orienta, lacks an ownership interest directly in the Asset, and consequently lacks standing.

****

Addressing the foregoing issues now will potentially save the parties and the Court from the unnecessary expenditure of substantial time and resources, and will facilitate the speedy resolution of this ancillary proceeding so that the 150 victims, including Individual ESO, might sooner receive at least some partial recovery.

## PROCEDURAL BACKGROUND

The Court by now is familiar with the history of the criminal liability portion of this case as set forth in the docket.  In a nutshell, on September 19, 2016, Defendant Swartz was charged by information with one count of wire fraud, in violation of 18 U.S.C. § 1343, and one count of tax evasion, in violation of 26 U.S.C. § 7201; Dkt. No. 2.  Swartz pleaded guilty to both counts. Dkt. No. 3.  As part of his plea agreement, Swartz stipulated to factual findings, in some detail, outlining his decade-long scheme to defraud investors and lenders.  Dkt. Nos. 2-3.  On July 12, 2017, the Court sentenced Swartz to 150 months in prison, and ordered that he pay more than $24 million in restitution.  Dkt. No. 51.

With regard to forfeiture, on September 23, 2016, the Court, following Swartz's plea of guilty, entered the Preliminary Order of Forfeiture ("POF") ordering forfeiture of the defendant's interest in the Asset as proceeds of the offense charged in Count One.  Dkt. No. 9 (POF ¶ 1a); *see also* Dkt. No. 66 (amended POF with money judgment totaling $12,535,400).

On July 3, 2017, Petitioner Orienta timely filed its third-party claim in the ancillary proceeding, asserting legal interests, which it later updated to respond to other claimants.  Dkt. No. 43.  Orienta asserted, in conclusory fashion, that its interest was superior to the Government's interest pursuant to 21 U.S.C. § 853(n)(6)(A).  *Id.* at 9, 11.  Other third parties, including Change Capital Partners and the Swartz Family Trust ("SFT"), filed their third-party claims against the Asset in August and September 2017, respectively.  Dkt. Nos. 68, 80.

On December 20, 2017, the Government moved to dismiss the claims of all petitioners. The Government contended that Orienta did not have a superior interest and could not establish they were a BFP. Dkt. No. 106 at 40. While the Government pressed its motion to dismiss against the multiple other claimants, the Government withdrew its motion to dismiss as to Orienta, asserting that discovery would be needed before resolving any BFP issue. Dkt. No. 117 at 3-4. Upon further review, Orienta never alleged in its Petition, as grounds for relief, that it was a BFP pursuant to section 853(n)(6)(B).

By Memorandum and Order dated August 9, 2019, the Court, in addition to ordering the interlocutory sale of the Asset, dismissed the petition of the SFT and Continental Trust, and further dismissed the claim of Change Capital as moot. *Swartz,* 391 F. Supp.3d 199; Dkt. No. 187. In so ruling, the Court recited Swartz's egregious fraud scheme underpinning the criminal conviction and judgment, one that began at least as early as 2002, and that the Asset represented proceeds and fruits of his fraud. Id. In dismissing the SFT's petition, the Court relied upon two different arguments: (1) that SFT failed to plead that it had a superior interest, and (2) that SFT's petition was untimely:

> [T]he trust has failed to plausibly plead an interest in the Asset that is superior to the Government's own, **which vested the moment Swartz tainted the property with his criminal conduct**. Chowaiki, 369 F. Supp. 3d at 571 ("Title to such property vests in the United States 'upon commission of the act giving rise to forfeiture.'") (quoting 18 U.S.C. § 981(f)).
>
> "Under the 'relation-back' doctrine of § 853(c), the government's interest in the proceeds of a fraud vests as soon as those proceeds come into existence, and is therefore superior to that of any subsequent third-party recipient of those funds (unless the third party is a bona fide purchaser for value)." Daugerdas, 892 F.3d at 548.
>
> And the definition of "proceeds" is a broad one, meaning "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net

gain or profit realized from the offense." 18 U.S.C. § 981(a)(2)(A) (emphasis added).

In other words, "[p]roceeds are property that a person would not have but for the criminal offense ...." *United States v. Nicolo,* 597 F. Supp. 2d 342, 346 (W.D.N.Y. 2009) (citation omitted)**. By the time the Swartz Family Trust obtained its alleged interest in the Asset for the first time in December 2005 as part of defendant's sham transaction with Grace Ventures, defendant's wire fraud scheme was already well underway**.

Various admissions made by Swartz as part of his plea agreement **conclusively establish that the 2002 formation of Grace Ventures and its subsequent acquisition of the Asset using money from other investors and a promissory note that defendant later manipulated into a total write off were part and parcel of the wire fraud itself**.

But for this fraudulent transfer to Grace Ventures, Swartz would not have obtained full control of the Asset at that time. Nicolo, 597 F. Supp. 2d at 346. And rather than demonstrate that the trust was a bona fide purchaser for value, defendant's transfer of the Asset to the trust (for no consideration) **was in fact a sham transaction made in furtherance of the same fraudulent scheme**. Accordingly, for these reasons, and for the other reasons set forth in detail in the Government's filings, the trust's petition would also be subject to dismissal for failure to state a plausible claim.

*Swartz,* 391 F.Supp.3d at 212-213, Dkt. No. 187 pp. 20-21 (emphasis added).

Orienta has now propounded discovery requests seeking, in substance, the entire investigation file containing voluminous documents, grand jury material and transcripts, FBI 302s, IRS MOIs, and victim statements and interviews, evidencing an apparent intent to challenge the Court's prior findings and criminal judgment against Swartz.  The Government moves for a stay of discovery pending resolution of this motion.[5]

---

[5]    *See United States v. Egan,* No. 10 Cr. 191 (JFK), 2011 WL 798852, *2 (S.D.N.Y. March 7, 2011)(Rule 32.2(c)(1)(B) of the Federal Rules of Criminal Procedure does not permit Petitioner to request discovery prior to a decision on the Government's motion to dismiss the
(continued...)

## FACTUAL BACKGROUND

In averring the facts, the Government relies upon the pleadings, the record filed with this Court concerning the prosecution and sentencing, the Court's prior rulings, and the Government's appendix previously submitted in support of its prior motion to dismiss, which it incorporates by reference herein.  *See* Dkt. No. 177 (cited as pages "FA-0000001").

**I.**      **SWARTZ'S WIRE FRAUD SCHEME BEGAN AT LEAST BY 2002**

Swartz was convicted of wire fraud in violation of 18 U.S.C. § 1343 based upon a decade-long scheme to defraud creditors and investors.  Dkt. Nos. 2-3.  Specifically, Swartz admitted that from in or about 2005 through in or about September 2015, he used promissory notes to obtain money and property from lenders and investors, executed a scheme and plan to defraud lenders and investors in his food and restaurant franchises and concepts by means of false and fraudulent pretenses, representations, and promises.  Dkt. No. 3 ¶ 5.

Swartz used multiple entities and shell companies to perpetuate this fraud scheme, including former claimant SFT.  Id. ¶ 5f.  Indeed, a crucial part of the wire fraud scheme to which he pleaded guilty was that Swartz not only <u>obtained</u> assets, but, between 2005 and 2015, <u>retained</u> assets, which included the Asset, by fraudulently concealing said assets from creditors and investors to bar recovery, including by using the SFT trust.  *Id.; see U.S. v. Torres,* 703 F.3d 194, 199-200 (2d Cir. 2012)(proceeds includes property <u>retained</u> because of criminal scheme); *see also*

---

outstanding petitions).  The Government acknowledges that Orienta would otherwise be entitled to discovery in the ancillary proceeding if it had a well-pleaded claim, but as this motion is potentially dispositive of the entire claim, discovery should be stayed until disposition of this motion.  *See* Fed. R. Crim. P. 32.2(c)(1)(B).  If the Court wishes the Government to produce discovery prior to the disposition of the instant motion to dismiss, the government requests that the Court order such disclosure pursuant to Fed. R. Crim. P. 6(e).

Stefan D. Cassella, Asset Forfeiture in the United States § 25-4 and n. 16 ("The most widely accepted definition is that the term "proceeds" means property that a person obtained or retained as a consequence of the commission of an offense.").

At sentencing, in addition to Swartz's admissions, the Government detailed in more than 105 pages of briefing, supported by a 6,500 pages of appendices, Swartz's fraud scheme from at least 2002 through 2015 in which he obtained, and retained, the Asset as proceeds of his wire fraud scheme.  Dkt. Nos. 37, 46, 176.  The Court adopted these facts and findings in a detailed and lengthy Pre-Sentence Report.  Dkt. No. 49.

When the Court sentenced Swartz to 150 months in prison, it did so based on a Sentencing Guideline computation of fraud loss that included victim losses occurring between 2002 and 2015, consistent with the count of conviction, including losses he caused to Ultimate Franchise when he fraudulently used a promissory note to misappropriate the Asset out of Ultimate Franchise in 2002. The Court, in its statement of reasons, held that Swartz began to operate in a fraudulent manner as early as 1996, continuously shifting and obfuscating his ownership of assets into various shell companies and sham trusts.  Dkt. No. 52.

## II.   SWARTZ OBTAINED, AND RETAINED, THE ASSET AS PROCEEDS OF HIS FRAUD SCHEME AS OF 2002[6]

### a.   2002: Swartz's Misappropriation of Jreck Subs

In 2002, Swartz formed Grace Ventures Group, Inc., a Delaware corporation.  FA-000047-66.  In August 2002, as CEO and director of Ultimate Franchise, he sold 80 percent of the Jreck

---

[6]     While the Court has itself has already addressed in detail the Asset's history and found the Asset forfeitable as proceeds of the offense, *Swartz,* 391 F.Supp.3d at 212-213, Dkt. No. 187 at 20-21, for ease of reference, we detail some of that history again, as the Government did at sentencing, and again as part of its first motion to dismiss, Dkt. No. 106, to remind the Court of (continued...)

Subs franchise, the Asset, to Grace Ventures for approximately $1.996 million.  FA-000068, FA-000070.  Ultimate Franchise allegedly retained a 20 percent interest.  *See id.*  At the time, the Asset was worth approximately $2.5 million.

Swartz financed the $1.9 million purchase price by issuing a promissory note for $1.3 million from his company Grace Ventures to Ultimate Franchise, with a purported $696,000 cash payment up front raised from other sources.  FA-000068, FA-000070.  Swartz, as CEO of Ultimate Franchise, reported in SEC filings after the deal that Ultimate Franchise was forgiving a substantial portion of the debt owed by Grace Ventures for the Asset.  FA-000090 (2003 SEC filing); FA-000092 (2004 SEC filing).  By 2004, Ultimate Franchise had written off the note due to alleged cash flow problems at Grace in exchange for a purported payment of $475,000 by Grace Ventures – despite the profitability of Grace Ventures at that time.  FA-000092; FA-000093.

The 20 percent of Jreck Subs purportedly retained by Ultimate Franchise was a sham.  Swartz admitted that he and Grace owned 100 percent of the Asset, *see, e.g.,* FA-000100; FA-000102; FA-000103 (admitting he acquired 100 percent for $2 million), and there is no evidence he paid Ultimate for the remaining 20 percent implied equity.

In short, Swartz, with some cash down, fronted by other investors, acquired 100 percent of the Asset using a promissory note he did not intend to pay in full, effectively obtaining dominion, control, and ownership of the Asset from Ultimate Franchise at a substantial discount through his wire fraud scheme in 2002.

---

the Asset's ownership progression and how the franchise became proceeds of his fraud scheme. However, the Government will begin in 2002, when the Asset became proceeds, as the most pertinent starting date for purposes this motion, with the prior history recounted in detail in prior filings.

b. **December 2005:  Swartz's Fraudulent Transfer of the Asset to the SFT**

As of August 2002, Swartz owned the Asset by fraudulently obtaining it through his shell company Grace Ventures, which in turn owned Jreck Subs, Inc.  The Grace Ventures entity afforded his ownership interest of the Asset a layer of protection and concealment.

Swartz added another layer of concealment over his ownership and control of Jreck Subs. In December 2005, when he was misappropriating other companies' funds, defaulting on promissory notes given to other investors, and incurring new note obligations with personal guarantees, Swartz "assigned" his 100 percent membership of Grace Ventures to the SFT for no consideration, an effort to retain the Asset by further blocking recovery by his creditors and investors.  FA-000110-111; FA-000112-142.

The trustee of the purported trust was UCC-B.  FA-000112.  The named beneficiaries were Swartz, his wife, and his children.  *Id.*  After a grand jury subpoena was served on UCC-B in February 2014, Swartz had his father-in-law become the trustee.  Swartz himself admitted that he disguised his true dominion over and control of businesses using layers of nominee entities, including, but not limited to, this family trust.[7]  Dkt. No. 3 ¶ 5cc.

Accordingly, 2005 marks another point at which the Government can say that the Asset was proceeds of Swartz' fraud scheme because he retained it through his unlawful conduct.

---

[7]     Multiple witnesses, including accountants, auditors, officers and managers of Jreck Subs, investors, and other witnesses, provided statements that Swartz owned Jreck Subs, the Asset, regardless of the name changes, and had complete dominion and control over it, including all its bank accounts and ultimately its profits.  FA-000146-147; FA-000153 ¶ 25; FA-000160; FA-000170; FA-000174; FA-000182 ¶ 4; FA-000189 ¶ 8; FA-000195; FA-000200; FA-000205-06; FA-000208-210; FA-000211. In fact, one close associate and investor paraphrased Swartz as saying that nothing happens at Jreck Subs without his direction.  FA-000206.

### c. 2009 – December 2011:  The Holding Capital Deal

With as much as $6 million in judgments and potential judgments on the horizon, defendant Swartz, in January 2009, sought out new investors to continue his promissory note scheme – this time using the Asset which he owned and controlled through Grace Ventures and the SFT trust. The new deal was with HCG Investors, a private equity firm in New York City.

Swartz structured the deal as follows.  First, Swartz caused new entities to be created in Delaware:  (1) Jreck Holding, LLC; (2) Jreck Franchising Company, LLC; and (3) Jreck Operating Company, LLC.  *E.g.* FA-000214-215 (Formation of Jreck Franchising Company LLC).  Then, SFT and its purported trustee, UCC-B, contributed the assets held by Grace Ventures and Jreck Subs, Inc., i.e., the Asset, first up to the SFT, and then down to the new entity Jreck Holdings, LLC.  FA-000216-241; FA-000242-245 (Contribution Agreement and Assignment of IP rights). In return, the SFT retained 70 percent ownership of Jreck Holdings, LLC (which now owned the Asset), and an HCG-affiliated entity owned 30 percent.

At about the same time, Jreck Holdings LLC assigned the Asset down to a subsidiary Jreck Operating Company LLC.  FA-000246-47.  On January 22, 2009, a few weeks after the deal, Jreck Operating Company simply assigned the Asset over to the other subsidiary Jreck Franchising Company LLC.  FA-000248-49.

Thus, as far as equity ownership is concerned, from 2009 until December 2011, the SFT owned 70 percent of Jreck Holdings, LLC, which was now a holding company, and HCG owned 30 percent.  Jreck Holdings LLC, in turn, owed two subsidiaries: (1) Jreck Franchising Company, LLC – which owned the Asset; and (2) Jreck Operating Company LLC which is the entity that developed and held corporate owned Jreck stores.

In addition to this chain of nominal ownership, HCG loaned money to Jreck Holdings as part of the deal – ultimately $639,000 in principal – reflected in three promissory notes. FA-

000250-51; FA-000281-82; FA-000294-95.  Those notes were secured by assets, namely, Jreck Franchising Company LLC and the Asset.  FA-000252-61; FA-000262-280; FA-000283-292; FA-000296-305; FA-000306-322 (security agreements).

### d.  December 2011:  Renaming To Focus Franchising Company LLC

In October 2011, after months of Swartz excuses, the HCG Investors filed a lawsuit seeking judgment for unpaid debt related to the promissory notes, threatening the seizure of the Asset.  See Plea Agreement, ECF Doc. 3 ¶ 5(s).

While the lawsuit was pending, Swartz filed certificates of amendment with the state of Delaware to rename the Jreck-related entities as follows:  (1) the Jreck Holdings was renamed Focus Acquisitions LLC; and (2) Jreck Franchising Company LLC was renamed Focus Franchising Company, LLC.  FA-000323-24; FA-000325-326.  Accordingly, as of December 2011, Focus Franchising Company LLC held the Asset.

### e.  May 2012: The Orienta Buyout

While HCG's lawsuit was pending, Swartz sought out new investors to take over HCG's position.  Individual WR, an attorney and close associate of Swartz, found a new investor for Swartz in Individual ESO who was also a client of Individual WR.  To execute the buyout of HCG, Individual WR formed Orienta Investors, LLC, a Florida entity.  FA-000329-332.  Individual WR and Individual ESO were each 50 percent owners.  Id.; FA-000510-543 (Orienta Operating Agreement).  Individual ESO loaned $1 million to Orienta, which Orienta then paid to the HCG Investors to purchase their equity and debt positions in the Jreck enterprise.  FA-000333-341 (Orienta purchase agreement); FA-000342-344 (FTI loan to Orienta).  Individual WR contributed just $1,000, which gave him half the equity in Orienta.  FA-000543.  The original agreements and documentation created in 2009 with HCG were all assigned over to Orienta as part of the buyout.

12

**f.   March 2013: Creation of Focus Franchising Inc. in Florida**

In March 2013, Swartz caused to be formed in Florida another nominee entity, Focus Franchising Inc., with Individual AR, a long-time associate and family friend, as sole officer and director.  FA-000754-779 (formation paperwork).  Individual WR, a principal in Orienta, acting as a nominee for Swartz, opened a bank account in the name of Focus Franchising Inc. in June 2014, at JP Morgan, in Florida.  FA-000784-85.  Swartz caused funds to be transferred from 2014 through 2015 out of Jreck Subs operations in Watertown to this account.

There is no evidence that between March 2013 and February 2015 that Focus Franchising Inc. was used for anything other than opening financial accounts, and transferring and receiving funds for Swartz.  Focus Franchising Company LLC (Delaware) continued to hold the Asset.

**g.   2015-2016: Fraudulent Attempt to Take Jrecks Public**

Swartz, using layers of nominees, attempted to take Jreck Subs public once again. Specifically, in or about May 2015, well aware of a substantial grand jury investigation against him, and knowing that numerous creditors were chasing his assets, Swartz converted Jreck Subs into a public company, hiding his ownership and control by taking the steps set forth below.

1.   **February 2015: Transfer of the Asset To Focus Franchising Inc.**

First, Swartz's father-in-law purchased a public shell company called Easy Organic Cookery, Inc. that was ultimately renamed New York Sub Company.  FA-000636-650.   In addition, on February 25, 2015, according to SEC filings, Focus Acquisitions LLC, Focus Franchising Company LLC (Delaware), and Focus Franchising Inc. (Florida) executed an agreement whereby Focus Franchising Company LLC contributed all its assets (namely, the Asset), to Focus Franchising Inc. (Florida) in exchange for all of Focus Franchising Inc.'s stock. FA-000711-723 (February 2015 Contribution Agreement).  Thus, as of February 2015, Focus Franchising Inc. nominally held the Asset.

### 2. **May 2015: Transfer of Focus Franchising Inc. to NSUB**

In May 2015, Swartz and his nominees completed taking Jreck Subs public by completing a reverse merger. Focus Acquisitions LLC and the new public company, New York Sub Company (ticker NSUB), completed an agreement whereby Focus Acquisitions LLC contributed Focus Franchising Inc. (Florida) which held the Asset at this point to NSUB in exchange for NSUB stock. FA-000558-617. Thus, after this transaction, and according to the SEC filings signed under penalty of perjury and other documents:

- Focus Franchising Inc. (Florida) owned the Jreck franchise contract rights;

- Focus Franchising Inc., in turn, was a wholly owned subsidiary of New York Sub Company, a public company;

- The stock of New York Sub Company was, in turn, owned by Focus Acquisitions LLC;

- Focus Acquisitions, in turn, was owned 70 percent by the SFT and 30 percent by Orienta.

Swartz's dominion, control, and ownership of the NSUB and Jreck operation is hidden in the SEC filings through his use of nominees. *See id.*

### 3. **March 2016: Unwinding of NSUB**

Swartz's effort to monetize his interest in Jreck subs throughout this public offering before creditors or the Government caught up to him was not successful. The Government began discussions with defendant concerning charges and a plea, including the fact that the Government was aware of what it believed was an ongoing attempted securities fraud. The Government is not aware that any shares in NSUB were actually sold to the investing public.

On October 19, 2016, Focus Acquisitions LLC and NSUB entered into another agreement whereby they unwound the public offering. FA-000724-753. NSUB gave back to Focus Acquisitions LLC all its stock in Focus Franchising Inc., and in return, Focus Acquisitions

14

cancelled its shares in NSUB. *Id.* Thus, after this transaction, Focus Franchising Inc., nominally

held the Asset, which has now been sold through the interlocutory sale authorized by the Court.

## ARGUMENT

### I.    LEGAL STANDARDS

#### a.    Applicable Forfeiture Law

Any person, other than the defendant, asserting a legal interest in property which has been

ordered forfeited to the United States may within thirty days of the final publication of notice or

his receipt of notice under 21 U.S.C. § 853(n)(1), whichever is earlier, petition the court for a

hearing to adjudicate the validity of his alleged interest in the property.  21 U.S.C. § 853(n)(2).  If,

as prescribed by statute, a third party files a petition asserting an interest in the property to be

forfeited, the court must conduct an ancillary proceeding. Fed. R. Crim. P. 32.2(c)(1).

The filing of a § 853(n) petition by a third-party claimant initiates an ancillary proceeding

that "closely resembles a civil action."  *Swartz,* 391 F.Supp.3d at 209 (*quoting* and *citing Pacheco*

*v. Serendensky,* 393 F.3d 348, 352 (2d Cir. 2004)), Dkt. No. 187 p. 15.  The petition, which is

sworn and must be signed by the petitioner, must also "set forth the nature and circumstances of

the petitioner's acquisition of the right, title, or interest in the property, the time and circumstances

of the petitioner's acquisition of the right, title, or interest in the property, any additional facts

supporting the petitioner's claim, and the relief sought." *Id.* (*quoting* § 853(n)(3)).

A third party petitioner can prevail in the ancillary proceeding only if it carries its burden

in establishing either one of two grounds:

> (A) the petitioner has a legal right, title, or interest in the property, and such right,
> title, or interest renders the order of forfeiture invalid in whole or in part because
> the right, title, or interest was vested in the petitioner rather than the defendant or
> was superior to any right, title, or interest of the defendant at the time of the
> commission of the acts which gave rise to the forfeiture of the property under this
> section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section . . .

21 U.S.C § 853(n)(6).

Third-party petitioners cannot challenge that the property was, in fact, forfeitable, or the underlying criminal prosecution and judgment; "they are limited to arguing that the third party's interest trumps the Government's." *Swartz,* 391 F.Supp.3d at 209-210, Dkt No. 187 p. 15; Chowaiki, 369 F. Supp. 3d 565, 572 (S.D.N.Y. 2019); *see also United States v. Andrews,* 530 F.3d 1232, 1236-37 (10th Cir. 2008) ("[A] third party has no right to challenge the preliminary order's finding of forfeitability; rather the third party is given an opportunity during the ancillary proceeding to assert any ownership interest that would require amendment of the order."); *see* 21 U.S.C. § 853(k)(1) (barring third parties from intervening in the criminal case); *see also United States v. BCCI Holdings* (Luxembourg) S.A. (Petition of ICIC Investments), 795 F. Supp. 477, 479 (D.D.C. 1992) (third party lacks standing to object to entry of order of forfeiture).

### b.  <u>Standard for Motion to Dismiss</u>

Federal Rule of Criminal Procedure 32.2(c) provides in relevant part that:

> **(1) In General.** If, as prescribed by statute, a third party files a petition asserting an interest in the property to be forfeited, the court must conduct an ancillary proceeding . . .
>
> > (A) In the ancillary proceeding, the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason. For purposes of the motion, the facts set forth in the petition are assumed to be true.

A motion to dismiss a third-party petition in a forfeiture proceeding, prior to discovery or a hearing, is treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b). *Pacheco,* 393 F.3d at 352 (2d Cir.). The facts set out in the petition are assumed to be true. *See St. George v. Pinellas County,* 285 F.3d 1334, 1337 (11th Cir. 2002). Conclusory

allegations are not entitled to be assumed true.  *See Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009).

"Where a petitioner fails to allege or make a *prima facie* showing of any legal right, title or interest

in the forfeited property, no hearing or trial is mandated." *United States v. Fabian,* 2013 WL

150361, *4 (W.D. Mich. 2013); *see U.S. v. BCCI Holding (Luxembourg) S.A.,* 916 F. Supp. 1276,

1282 (D.C. D.C. 1996).

      If the Court is presented with evidence outside the pleadings, it has discretion to consider

such matters and convert a motion to dismiss as one for summary judgment.  Fed. Civ. Proc. R.

12(d).  *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 46-48 (2d Cir. 1991); *Chambers

v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002).

      As part of the ancillary proceeding, the Court may also consider the relevant portions of

the record of the criminal prosecution and sentencing.  21 U.S.C. §853(n)(5); *see United States v.

Capoccia,* 503 F.3d 103, 109; *e.g., United States v. Morgan,* 224 F.3d 339, 345 (4th Cir. 2000) (in

conducting the ancillary proceeding, district court properly considered the evidence and testimony

presented in the criminal trial and the jury's verdict, as well as the petition filed in the ancillary

proceeding, the Government's response, and the evidence presented in the hearing).

## II.    ORIENTA HAS NOT ALLEGED A PLAUSIBLE CLAIM THAT ITS INTEREST VESTED PRIOR TO THE GOVERNMENT'S INTEREST PURSUANT TO SECTION 853(n)(6)(A)

      Just like SFT (*see* Dkt. No. 187 at 20), Orienta has not pleaded and cannot show a superior

interest under 21 U.S.C. § 853(n)(6)(A), either through its purported equity interest or secured debt

interest, because, based on the facts asserted in the operative petition, its interests vested no earlier

than May 9, 2012.  Even if the Court were to accept the earlier date Orienta attempted to assert in

opposition to the Government's original motion to dismiss, by its own admission, its claimed

interests vested no earlier than January 2009 – and, thus, well <u>after</u> the "acts that gave rise to

forfeiture," namely Swartz's wire fraud scheme, and well after the Asset became proceeds of that scheme as determined by the Court – as early as 2002.

All claims brought under § 853(n)(6)(A) must show that the interest claimed predated the criminal conduct under the "relation back" doctrine.  That is, Orienta can only block forfeiture if either of its claimed interests (equity interest or debt interest) vested <u>before</u> the "acts that gave rise to the forfeiture."  *See* 21 U.S.C. § 853(n)(6)(A); *United States v. Watts,* 786 F.3d 152, 166 (2d Cir. 2015) ("Subsection 853(n)(6)(A) works hand in hand with the 'relation-back' doctrine embodied in § 853(c),"); *United States v. Timley,* 507 F.3d 1125, 1130 (8th Cir. 2007) ("Section 853(n)(6)(A)—the priority-of-ownership ground—embodies the relation back doctrine."); *United States v. Nava,* 404 F.3d 1119, 1129 (9th Cir. 2005) (because government's interest in the property vested at the time of the offense giving rise to forfeiture under the relation back doctrine, claimant can recover under § 853(n)(6)(A) only if her interest vested <u>before</u> that time); *United States v. Eldick,* 223 F.App'x. 837, 840–41 (11th Cir. 2007) ("the Government's interest will be superior to that of anyone whose interest does not antedate the crime").  If Orienta cannot show the temporal element, then its claim must necessarily fail.

In its Petition, Orienta does not assert facts that, if true, would show that its interest vested prior to the "acts which gave rise to the forfeiture."  *See* Dkt. No. 43.  Instead, Orienta alleged facts that show that its interest vested on May 9, 2012, when it purchased its equity and debt interests by buying out the HCG Investors.  *Id.* at 3-4.  While Orienta argues throughout its Petition, in conclusory fashion, that its interest is superior to the Government's interest, nowhere will the Court find any allegation that Orienta's interest vested before 2002.  See <u>id.</u>  Indeed, nowhere in the petition will the Court find that Orienta makes any allegation about the date of vesting of its interest or the Government's.  *See id.*  Instead, Orienta only states when it purchased its interest (May 9,

2012) and leaves it to the imagination of the reader to conjure up a later date for the first criminal conduct.

In response to the Government's initial motion to dismiss, prior to the Government's withdrawal of that motion, Orienta responded in part by claiming that its interests vested in January 2009, not May 2012, because it bought out the HCG Investors interests and, thus, "stood in their shoes."  *See* Dkt. No. 112 at 1, 13 ("Orienta's interest in the Asset vested in 2009, when HCG obtained its security interest in the Asset.").  Because HCG Investors purchased its interests in January 2009, Orienta claims its interests vested then too.

The Court need not consider Orienta's vesting argument because it was not alleged in the petition, but even if the Court were to assume Orienta's interests vested in January 2009, Orienta's superior interest claim still fails as a matter of law.  Orienta asserts in a brief (not its Petition) the Government's interest could not have vested until 2011 – and thus <u>after</u> Orienta's interests purportedly vested – because the criminal Information against Swartz merely charged interstate wire transactions beginning in 2011.  Dkt. No. 112 at 2-3, 10.  Not only is this argument belied by what this Court already held in this case, *see Swartz,* 391 F.Supp.3d at 212-213; Dkt. No. 187 at 20-21, forfeiture law is universally against Orienta, including controlling Second Circuit law.

For purposes of forfeiture, it does not matter that Swartz pled guilty to a few substantive 2011 wires: the "acts that gave rise to the forfeiture" include charged and uncharged conduct, occurring even before and outside the statute of limitations, that are part of the same scheme to defraud charged in the count of conviction.  *See United States v. Fruchter,* 411 F.3d 377, 384 (2d Cir. 2005) (holding that all property representing proceeds of illegal activity is subject to forfeiture even proceeds derived from conduct forming the basis of a charge of which the defendant was acquitted); *United States v. Capoccia,* 503 F.3d 103, 115 (2d Cir. 2007) (to obtain forfeiture for

events which predate the charge of conviction, the charged offense must allege a scheme); *United States v. Venturella,* 585 F.3d 1013, 1015, 1016-17 (7th Cir. 2009) (forfeiture in a mail fraud case "is not limited to the amount of the particular mailing but extends to the entire scheme;" defendant's guilty plea to one substantive count involving $477 rendered her liable for money judgment of $114,000); *United States v. Reed,* 908 F.3d 102, 125(5th Cir. 2018) (defendant can be ordered to forfeit all proceeds of a mail fraud scheme continuing over 20 years, even past statute of limitations); *United States v. Lo,* 839 F.3d 777, 793(9th Cir. 2016) (language of statute allows forfeiture of any property obtained as a result of mail or wire fraud schemes as a whole, including acts of the scheme which were not charged); *United States v Harris,* 2018 WL 6184878, *7 (Nov. 27, 2018, D. Hawaii) (forfeitable proceeds of wire fraud includes all proceeds of the scheme including uncharged conduct); *United States v. Clark,* --- F. Supp. 3d ---, 2016 WL 361560, *2-3 (S.D. Fla. Feb. 25, 2016) (in an ongoing massive investment fraud scheme, district court imposed the total amount generated from the entire scheme as money judgment forfeitures on each of the three substantive counts of 18 U.S.C. § 1344, bank fraud, of which defendant was convicted); *United States v. Sigillito,* 899 F. Supp.2d 850, 861-62 (E.D. Mo. 2012) (same; defendant must forfeit the proceeds of the entire scheme, even if some of the proceeds were realized outside of the 5-year statute of limitations); *United States v. Boesen,* 473 F. Supp. 2d 932, 952 (S.D. Iowa 2007) (in a fraud case, forfeiture is imposed because the defendant has been convicted of perpetrating a scheme; it does not matter how many executions of that scheme were alleged in the indictment; hence a defendant convicted of 82 substantive counts of health care fraud must forfeit the proceeds of the entire scheme, not just the proceeds involved in the 82 counts on which he was convicted); *United States v. Yass,* 636 F. Supp. 2d 1177, 1185 (D. Kan. 2009) (following Boesen; defendant convicted of mail fraud is liable to forfeit the proceeds of the entire scheme, not just the proceeds

linked to the six executions of the scheme alleged as substantive counts); *United States v. Hailey,* 887 F. Supp. 2d 649 (D. Md. 2012) (although only $2.9 million was obtained from the 8 substantive counts on which defendant was convicted, he was required to forfeit the $9.1 million obtained from the entire scheme); *accord United States v. Jafari,* 2016 WL 5340280 (2d Cir. Sept. 22, 2016) (in healthcare fraud prosecution pursuant to 18 U.S.C. § 1347, defendant was correctly assessed the proceeds of billings not directly charged in the indictment, or contained in counts on which she was acquitted where government established underlying criminal conduct by preponderance of the evidence).

In applying the "relation back" doctrine, the Court may consider, as some of the courts did in the foregoing cases, underlying criminal conduct as part of the same scheme to defraud for which Swartz was convicted.  Here, the charged count of conviction and Swartz's allocution itself establishes that Swartz's wire fraud scheme began at least by 2005, which resulted in the Asset being proceeds by 2005.  Additional information, including 6,500 pages of evidence upon which the Court sentenced the defendant, all averred and established Swartz's wire fraud scheme that resulted in the Asset being proceeds beginning in 2002, and again in 2005.

Accordingly, consistent with the Court's order that the Government's interest was superior to SFT in December 2005, the Government's interest is superior to any claimant, including Orienta who alleges an interest that vested after December 2005 (at a minimum).  Also, consistent with the Court's order, the Government's interest vested in 2002, thus any petition that does not assert an interest in the Asset that vested before 2002 fails to plead a superior interest.  Orienta has not alleged an interest that vested prior to either 2002 or 2005.

### III. ORIENTA HAS NOT ALLEGED IN ITS PETITION THAT IT IS A BONA FIDE PURCHASER WITHOUT KNOWLEDGE THAT THE ASSET WAS SUBJECT TO FORFEITURE

Pursuant to 21 U.S.C. § 853(n)(3), Orienta's Petition must set "forth the nature and extent of the petitioner's right, title, or interest in the property" subject to forfeiture.  Of the two available grounds for relief, throughout its petition, Orienta only cited to 21 U.S.C. § 853(n)(6)(A) as the basis for relief.  *See* Dkt. No. 43, p. 9, 11.  By contrast, Orienta never cited to 21 U.S.C. § 853(n)(6)(B) to advance an ownership interest.  *See* Dkt. No. 43.  Similarly, Orienta discussed its superior interest in the defendant's forfeited property as authority for its claim pursuant to § 853(n)(6)(A).  *See* Dkt. No. 43, p. 11-12 ("Federal Courts have often recognized that a mortgagee's interest or right in subject property is superior to a defendant's ownership interest in the same property subject to forfeiture under 21 U.S.C. § 853(n)(6)(A).").  Further, Orienta referenced the relation-back doctrine which is applicable only to a petition claiming an ownership interest pursuant to § 853(n)(6)(A).  *Id.* at 12.  Again, by contrast, Orienta never once identified themselves as a *bona fide* purchaser for value of the property, nor did Orienta state in their Petition that they were without cause to believe that the property was subject to forfeiture nor allege facts which would support or lead one to infer such a contention.[8]  A claimant must plead sufficient facts showing entitlement to relief under 21 U.S.C. § 853(n)(6)(A) or (B) to survive a motion to dismiss.  *See United States v. Ceballos Lepe,* 977 F.Supp.2d 1085, 1090 (D. Utah Oct. 10, 2013).  This Orienta did not do.

---

[8]     This is not just a case of the expression of one thing excluding the other.  The Court may infer that in defending its own interest, Orienta's omission of any reference to the second prong of § 853(n)(6) was deliberate, and not caused by mere oversight or ignorance of the law, because Orienta spent most of a page in its second petition disputing Change Capital Partners' claim to be a *bona fide* purchaser.  Dkt No. 83 at 16-17.  The implication of such drafting is that Orienta was familiar with section 853(n)(6)(B), the BFP prong, and elected not to assert it.

Having elected to not assert that it was *bona fide* purchaser under 21 U.S.C. § 853(n)(6)(B), Orienta cannot now seek to amend its petition almost three years after the deadline established by 21 U.S.C. § 853(n)(2).  The statute requires that claims must state their interest and be filed within the 30 day time period.  21 U.S.C. § 853(n)(2), (3).  Once the time for filing a claim has passed, the petitioner may not amend the petition to include new grounds.  Stefan D. Cassella, Asset Forfeiture Law in the United States § 23-4 (2013); *see also United States v. Soreide,* 461 F.3d 1351, 1355 (11th Cir. 2006) (*per curium*) ("We will not vacate the summary judgment nor provide relief from the final order of forfeiture based upon a claim that was not asserted as required by the statute."); *United States v. Watson, 5*49 F.Supp.2d 961, 964 (W.D. MI. 2008) (rejecting a *bona fide* purchaser claim which was not asserted in the petition, but was only referenced in later filings); *United States v. Strube,* 58 F.Supp.2d 576, 585 (M.D.P.A. 1999) (new theories presented after the 30 day window provided by 21 U.S.C. § 853(n)(2) are untimely); *United States v. White*, 675 F.3d 1073, 1079 n. 9 (8th Cir. 2012) (quoting District Court in *dicta*:  "Courts typically look askance at belated attempts to add new or additional grounds for relief to third-party petitions.").

## IV.   ORIENTA HAS NO STANDING TO ASSERT AN EQUITY INTEREST IN THE ASSET

Orienta has plead itself out of an equity ownership interest in the Asset.  That is, Orienta has no standing to assert any equity interest in the Asset because, by its own admission, Orienta did not own the Asset, but rather has only a 35 percent legal ownership interest in a holding company, which in turn owns a company, which in turn allegedly owned the Asset.

Orienta's Petition and other filings allege that, on May 9, 2012, Orienta bought out the HCG Investor's equity and debt interests in the Asset.  More specifically, Orienta took a 35 percent equity interest in Focus Acquisitions, LLC, a Delaware entity, while the Swartz Family Trust retained the remaining 65 percent.  Focus Acquisitions, in turn, owned two companies: (1) Focus

Franchising Company, LLC; and (2) Focus Operating Company.  Dkt. No. 43 ¶ 11.  According to Orienta, Focus Franchising Company, in turn, owned the Asset, i.e., the Jreck Subs franchising rights and trademarks.[9]  In the same transaction, outstanding promissory notes were assigned from HCG to Orienta, debt that was purportedly secured by assets held by, among others, Focus Franchising Company, assets that purportedly included the Asset.  Dkt. No. 43 at 4-7.

Accordingly, as concerns its equity interest, Orienta, by its own admission is merely a shareholder at least two corporate levels removed from any legal interest in the Asset.  It is a fundamental rule of corporate law that members of LLCs do not own the assets of the LLC.[10]  See 6 Del.C. § 18-701 ("A member has no interest in specific limited liability company property."). "Because they lack any ownership interest in the assets of the corporation, shareholders do not have standing to challenge the forfeiture of corporate assets."  Stefan D. Cassella, Asset Forfeiture in the United States § 23-13(d); see also United States v. All Funds in the Account of Prop. Futures, Inc., 820 F. Supp. 2d 1305, 1326 (S.D. Fla. 2011) (citing United States v. New Silver Palace Restaurant, Inc., 810 F. Supp. 440,443 (E.D.N.Y. 1992)).  That is, as a mere shareholder, Orienta does not own the Asset.

In short, Orienta, as a fractional owner of Focus Acquisitions, LLC, does not have standing to contest the forfeiture of an asset it admits it does not own.  All Funds in the Account, 820 F.Supp.2d at 1328 ("mere minority-interest members of the Buyer/Lessor LLCs, Claimants

---

[9]    Orienta specifically alleged that "Focus Acquisitions, LLC is the parent company of the JRECK enterprise (consisting of Focus Franchising Company, LLC (fka JRECK Franchising, LLC,), The New York Sub Company, Focus Franchising, Inc., and JRECK Restaurant Company, LLC (fka JRECK Operating, LLC)."  Dkt. No. 43¶ 11.  It later clarified its allegation saying that it was Focus Franchising Company that owned the Asset.  Dkt. No. 83 at 14.

[10]    Both Focus Acquisitions, LLC, and Focus Franchising Company, LLC, are Delaware companies, thus the Delaware law of business associations applies. Dkt. No. 83 at 2.

lack Article III standing to assert in their in individual capacities, rights belonging to the LLC as an entity.").  Accordingly, its 35 percent equity ownership claim asserted in the petition should be dismissed.

### CONCLUSION

For the reasons set forth above, the Government respectfully requests that that the Court dismiss Orienta's petition and stay discovery pending the resolution to the Motion to Dismiss.

Date:   July 22, 2020                    Respectfully submitted,

                                        GRANT C. JAQUITH
                                        Acting United States Attorney

                        By:     /s/Tamara Thomson
                                TAMARA THOMSON
                                Assistant U.S. Attorney
                                Bar Roll No.: 515310

                        By:     /s/John N. Kane Jr.
                                JOHN N. KANE, JR.
                                Assistant Chief
                                United States Department of Justice
                                Tax Division, Northern Criminal Enforcement
                                Bar Roll No.:  515130

                        By:     /s/Clifford R.R. Krieger
                                CLIFFORD R.R. KRIEGER
                                Special Assistant United States Attorney
                                Northern District of New York
                                Associate General Counsel
                                United States Marshals Service
                                Virginia Bar No.:  51044