UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Case No.:  5:16-cr-00264 (DNH) |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CHRISTOPHER M. SWARTZ,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CLAIMANT ORIENTA INVESTORS, LLC'S MOTION TO ALTER OR AMEND
AND TO RECONSIDER ORDER GRANTING
GOVERNMENT'S SECOND MOTION TO DISMISS AND
<u>DISMISSING CLAIMANT'S CLAIM PETITION WITH PREJUDICE</u>**

# TABLE OF CONTENTS

**Page**

BACKGROUND ........................................................................................................ 1

A.    Petition and First Motion to Dismiss ............................................................ 1

B.    Withdrawal of First Motion to Dismiss Because Factual Discovery Was Necessary ...................................................................................................... 4

C.    The Court Acknowledges Orienta's BFP and Superior Interest Claims and Accepts the Government's Position ................................................................ 6

D.    The Government Changes its Course and Files Second Motion to Dismiss ..................... 7

LEGAL STANDARD .............................................................................................. 9

LEGAL ARGUMENT ............................................................................................. 10

I.    CLEAR ERROR TO DISMISS BONA FIDE PURCHASER FOR VALUE CLAIM .............................................................................................................. 10

    A.    No Heightened Pleading Standard Under Controlling Law ................................ 10

    B.    Orienta's Petition Meets the Liberal Pleading Standard ..................................... 10

II.    THE COURT CLEARLY ERRED IN ALLOWING THE GOVERNMENT TO ARGUE ORIENTA DID NOT STATE A CLAIM FOR BONA FIDE PURCHASER. ..................................................................................................... 13

    A.    The Judicial Estoppel Doctrine ...................................................................... 14

    B.    All Criteria of Judicial Estoppel Are Met ...................................................... 16

III.    THE COURT CLEARLY ERRED IN DISMISSING ORIENTA'S PETITION WITH PREJUDICE ........................................................................................... 18

IV.    THE COURT CLEARLY ERRED IN DISMISSING ORIENTA'S "SUPERIOR INTEREST" CLAIM WHERE THERE IS A FACTUAL DISPUTE. ..................... 21

CONCLUSION ........................................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*4 Pillar Dynasty LLC v. N.Y. & Co., Inc.*,
  933 F.3d 202 (2d Cir. 2019)..........................................................................................14

*AARP v. U.S.E.E.O.C.*,
  292 F. Supp. 3d 238 (D.C. 2017)...................................................................................10

*Arar v. Ashcroft*,
  585 F.3d 559 (2d Cir. 2009)..........................................................................................13

*Bembo v. Cty. of Niagara*,
  No. 13-CV-413JTC, 2013 WL 5288169 (W.D.N.Y. Sept. 18, 2013) .....................13

*Bill Diodato Photography LLC v. Avon Prods., Inc.*,
  No. 12 Civ. 847(RWS), 2012 WL 4335164 (S.D.N.Y. 2012)................................14

*Charles Schwab Corp. v. Bank of Am. Corp.*,
  883 F.3d 68 (2d Cir. 2018)............................................................................................21

*China Shipping Container Lines Co. Ltd. v. Big Port Serv. DMC*,
  No. 15 Civ. 2006, 2019 WL 9362547 (S.D.N.Y. Jan. 15, 2019)...........................18

*Cortec Indus., Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991)............................................................................................11

*Counihan v. Allstate Ins. Co.*,
  194 F.3d 357 (2d Cir. 1999)..........................................................................................24

*Davis-Garett v. Urban Outfitters, Inc.*,
  921 F.3d 30 (2d Cir. 2019)............................................................................................23

*DeRosa v. Nat'l Envelope Corp.*,
  595 F.3d 99 (2d Cir. 2010)............................................................................................15

*Dorsett-Felicelli, Inc. v. Cty. of Clinton*,
  No. 1:04-CV-1141 LEK/RFT, 2013 WL 3897578 (N.D.N.Y. July 29, 2013)......22

*Glob. Network Commc'ns, Inc. v. City of New York*,
  458 F.3d 150 (2d Cir. 2006)..........................................................................................21

*Holick v. Cellular Sales of N.Y., LLC*,
  No. 1:13-CV-738, 2015 WL 12978186 (N.D.N.Y. July 30, 2015).........................15

*In re Bennett*,
   2007 WL 2480524 (N.D.N.Y.Bankr. Aug. 28, 2007) ............................................................9

*In re Joe's Friendly Serv. & Son, Inc.*,
   No. 8-14-70001, 2020 WL 3120288 (E.D.N.Y.Bankr. June 11, 2020) ..................................18

*Lomascolo v. Otto Oldsmobile-Cadillac, Inc.*,
   253 F.Supp.2d 354 (N.D.N.Y. 2003) ....................................................................................15

*Munafo v. Metropolitan Transp. Auth.*
   381 F.3d 99 (2d Cir. 2004) ....................................................................................................9

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) ......................................................................................................14, 15

*Orafan v. Goord*,
   No. 00CV2022(LEK/RFT), 2003 WL 21972735 (N.D.N.Y. Aug. 11, 2003) ........................22

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
   602 F.3d 57 (2d Cir. 2010) ..................................................................................................22

*Sanchez v. Nassau Cty.*,
   No. CV177335JFBAKT, 2019 WL 2438652 (E.D.N.Y. Feb. 28, 2019) ...............................13

*Shrader v. CSX Transp., Inc.*,
   70 F.3d 255 (2d Cir. 1995) ....................................................................................................9

*U.S. v. Bennett*,
   2004 WL 829015 (S.D.N.Y. Apr. 15, 2004) ............................................................................9

*U.S. v. Burge*,
   829 F. Supp. 2d 664 (C.D.Ill. 2011) ....................................................................................12

*U.S. v. Capoccia*
   503 F.3d 103 (2d Cir. 2007) ..........................................................................................22, 23

*U.S. v. Ceballos-Lepe*,
   977 F. Supp. 2d 1085 (D.Utah 2013) ..................................................................................12

*U.S. v. Chandler*,
   No. 1:18-CR-00079.2019 ....................................................................................................20

*U.S. v. Chowaiki*,
   369 F. Supp. 3d 565 (S.D.N.Y. 2019) ..................................................................................11

*U.S. v. Daugerdas*,
   892 F.3d 545 (2d Cir. 2018) ..................................................................................10, 19, 21

*U.S. v. Espada*,
128 F. Supp. 3d 555 (E.D.N.Y. 2015) .................................................................12

*U.S. v. Glenn*,
No. CR–10–084–RAW, 2012 WL 3775965 (E.D.Ok. Aug. 28, 2012) ...................................20

*U.S. v. Huntington Nat'l Bank*
574 F.3d 329 (6th Cir. 2009) .......................................................................13, 19

*U.S. v. Lamid*,
663 F. App'x 319 (5th Cir. 2016) ........................................................................20

*U.S. v. Lesak*,
No. 07 CR. 0396 (GEL), 2009 WL 1788411 (S.D.N.Y. June 23, 2009)...............................24

*U.S. v. Liquidators of European Federal Credit Bank*,
630 F.3d 1139 (9th Cir. 2011) ...........................................................................15

*U.S. v. Mendez*,
No. 07-CR-107 (ARR), 2008 WL 3874318 (E.D.N.Y. Aug. 19, 2008)................................11

*U.S. v. Okonkwo*,
NO: 6:14–cr–5–Orl–40GJK, 2016 WL 6984273 (M.D.Fla. Nov., 29, 2016) ........................20

*U.S. v. One (1) Mercedes*,
651 F. Supp. 351 (S.D.Fla. 1987) .......................................................................19

*U.S. v. Pegg*,
No. 7:97–CR–30, 2000 WL 34612651 (M.D.Ga. Nov. 9, 2000) ...........................................19

*U.S. v. Salkey*,
No. 2:15CR146, 2016 WL 3766308 (E.D.Va. July 11, 2016)................................................12

*U.S. v. Sarabia-Ramirez*,
No. 1:14-cr-00226 2019 WL 1493338 (E.D.Cal. April 4, 2019)...........................................20

*U.S. v. Simmons*,
No. 17-CR-127 (KMW), 2019 WL 3532113 (S.D.N.Y. Aug. 2, 2019) ................................12

*U.S. v. Soreide*,
461 F.3d 1351 (11th Cir. 2006) ..........................................................................12

*U.S. v. Southland*,
No. 5:04-CR-345 (NAM), 2006 WL 1007656 (N.D.N.Y. Apr. 18, 2006)............................11

*U.S. v. Strube*,
58 F. Supp. 2d 576 (M.D. Pa. 1999) ...................................................................20

*U.S. v. Tanski*,
    No. 1:04-CV-714, 2006 WL 8452789 (N.D.N.Y. Jan. 11, 2006) ...........................................15

*U.S. v. U.S. Currency, in the Amount of $103,387.27*,
    863 F.2d 555 (7th Cir. 1988) ...........................................................................................19, 20

*U.S. v. Vithidkul*,
    No. DKC 12–624, 2014 WL 1515130 (D.Md. April 16, 2014) .............................................20

*U.S. v. Watson*,
    549 F. Supp. 2d 961 (W.D.Mich. 2008) ...............................................................................12

*U.S. ex rel. Carter v. Halliburton Co.*,
    315 F.R.D. 56 (E.D.Va. 2016), *aff'd*, 866 F.3d 199 (4th Cir. 2017) .....................................10

*Vaughn v. Consumer Home Mortg. Co. Inc.*,
    470 F. Supp. 2d 248 (E.D.N.Y. 2007) ..................................................................................14

*Weidberg v. Barnett*,
    752 F. Supp. 2d 301 (E.D.N.Y. 2010) ..................................................................................24

*Willis Management (Vermont) Ltd. v. United States*,
    652 F.3d 236 (2d Cir. 2011)..................................................................................................10

**Statutes**

21 U.S.C. § 853................................................................................................................ passim

**Rules**

Fed. R. Civ. P. 10(c) ..........................................................................................................11

Fed. R. Civ. P. 12(b) ..............................................................................................3, 5, 7, 10, 11

Fed. R. Civ. P. 59 and 60 ..................................................................................................1, 9, 14

Fed. R. Crim. P. 32.2(c) .......................................................................................................9

Claimant Orienta Investors, LLC ("Orienta"), per Fed. R. Civ. P. 59 and 60, moves for entry of an Order altering or amending and reconsidering the January 7, 2021 Order granting the Government's Second Motion to Dismiss and dismissing Orienta's Petition with Prejudice (the "January 7 Order") (Dk 259) because, respectfully, the Court committed clear error in:

(1) applying an incorrect heightened pleading standard in dismissing Orienta's Petition in finding Orienta failed to sufficiently allege it is a bona fide purchaser for value without knowledge;

(2) overlooking Orienta's judicial estoppel argument, which dictates that the Government be estopped from claiming Orienta did not state a bona fide purchaser claim;

(3) dismissing Orienta's Petition with prejudice for an alleged failure to meet the forfeiture statute's 30-day <u>filing</u> deadline, which does not apply to amendment of petitions; and

(4) dismissing Orienta's "superior interest" claim based on facts in dispute, effectively entering summary judgment without allowing for discovery.

## **<u>BACKGROUND</u>**

*A.   Petition and First Motion to Dismiss.* On July 3, 2017, Orienta timely filed its petition. (Dk 43, Petition.) The petition repeatedly alleges Orienta purchased the Jreck Subs franchise rights, intellectual property, and other Jreck property at issue in this proceeding (the "Asset") for value without knowledge of any criminal activity connected to the Asset after being fraudulently induced to do so by Christopher Swartz ("Swartz"). Specifically, the Petition alleges that:

- "Orienta's interest is by virtue of its secured investment in the subject property ***and as a victim of [Swartz's] fraudulent conduct***." (*Id.* at 1 (emphasis added).);

- Orienta "can satisfy the requirements under 21 U.S.C. § 853(n)(3)-***(6)***[.]" (*Id.* at 13 (emphasis added).);

- "[Swartz] ***fraudulently induced Orienta to enter into a purchase agreement for $1 million***[.]" (*Id.* at 3 (emphasis added).);

1

- "As a result of these fraudulent representations, on May 9, 2012, Orienta executed a purchase agreement . . . to acquire the" Asset. (*Id.*);

- "Orienta has a valid interest in the subject property . . . as a ***victim of [Swartz's] fraudulent conduct***." (*Id.* at 9 (emphasis added).);

- "Amending the forfeiture Order to perfect Orienta's interest in the subject property comports ***with the statutory language of 21 U.S.C. § 853 and furthers the equitable goal of protecting innocent victims from criminal conduct.***" (*Id.* at 12 (emphasis added).); and

- "Orienta has set forth the nature and extent of its right or interest in the subject property as a secured investor and ***victim of [Swartz's] fraudulent conduct***." (*Id.* at 13 (emphasis added).)

Orienta also alleged that its interest in the Asset is superior to and vested before the Government's interest in the Asset pursuant to 21 U.S.C. § 853(n)(6)(A). (*Id.* at 8-9.)

Orienta purchased the Asset at issue in this case in May 2012 and has, since that time, maintained its security interest in the Asset, and thus Orienta's interest in the Asset is superior to any claimed interest of the Government. Orienta attached documents as exhibits to its petition that reflect its purchase and ownership of the Asset and suggest a negotiated purchase for value and ownership of the Asset without knowledge of criminal activity. (*Id.* at 3 n.1; *see also* Dk 253-1, Kessler Decl., Ex. A (Dks 43-1 through 43-14).) On September 21, 2017, Orienta filed an amended petition repeating these allegations and providing further context on events that occurred after Orienta obtained its interest in the Asset. (Dk 83.)

On December 18, 2017, Orienta once again repeated the factual and legal bases in support of its claims, including its bona fide purchaser for value ("BFP") claim, in its Motion for Leave to File Response to Court Order and in Support of its Claim Interest in Forfeited Property by Orienta Investors, LLC as to Christopher Swartz. (*See* Dk 103.)

On December 20, 2017, the Government filed a motion to dismiss Orienta's petition as well as the petitions filed by the Swartz Family Trust ("SFT"), Continental Trust Corporation

Limited ("CT"), and Change Capital Partners Fund 1, LLC ("CCPF"). (Dk 106, First Mot. to Dismiss.) As to Orienta, that motion to dismiss mirrors the Government's subsequent motion to dismiss, arguing: Orienta Did Not Have a Superior Interest Under § 853(n)(6)(A); Orienta, In Its Role As Secured Creditor, Cannot Be A BFP Under § 853(n)(6)(B); and Orienta Has No Standing as An Equity Owner. (*Id.* at 2, 36-40.)

At the outset, the Government acknowledged the correct liberal pleading requirements applicable to this case, stating:

> ***A motion to dismiss a third-party petition in a forfeiture proceeding, prior to discovery or a hearing, is treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b).*** *Pacheco v. Serendensky,* 393 F.3d 348, 352 (2d Cir. 2004); *Willis Management (Vermont) Ltd. v. United States,* 652 F.3d 236 (2d Cir. 2011); *United States v. Salti*, 579 F.3d 656, 667 (6th Cir. 2009) (citation omitted), *United States v. Marion*, 562 F.3d 1330, 1335 (11th Cir. 2009). The facts set out in the petition are assumed to be true. *See St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).

(*Id.* at 18 (emphasis added)). The Government chose not to assert any pleading deficiencies under Fed. R. Civ. P. 12(b) or under the Forfeiture Statute, §853(n)(6)(A) or (B) in Orienta's Petition and did not seek dismissal on those grounds. (*See id.*)

Orienta responded in opposition to the Government's first motion to dismiss, again asserting the factual and legal bases in support of the BFP claim asserted in its Claim Petition. (Dk 112.)

- "***Orienta qualifies as a BPV[1] as a matter of law pursuant to plain language of the statute***, which provides that if a party is unaware of the possibility of forfeiture at the time of purchase of the assets, then that party's interest is superior to the Government's." (*Id.* at 10-11 (emphasis added).)

- "The Petition alleges, and the ***Government does not dispute, that (1) Orienta was a bona fide purchaser for value in 2012***, and that (2) Orienta was unaware of Swartz's fraud in 2012. The Government argues only that the Orienta should be excluded from the protection of the BPV exception because, for an eight-month period in 2015, Orienta's security interest in the Asset allegedly lapsed." (*Id.* at 14 (emphasis added).)

---

[1] BPV is used interchangeably with BFP and has the same meaning.

- "Because of this lapse, the Government argues, Orienta cannot qualify as a BPV because Orienta did not obtain security agreements with the transferee entities prior to Orienta becoming aware[2] of the possibility of forfeiture due to the Government's indictment of Swartz." (*Id.* at 15.)

- "The plain language of the forfeiture statute grants protection where 'the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe.' 21 U.S.C § 853(n)(6)(B) . . . ***Because a security interest is a type of specific 'interest' in property, the purchaser of a security interest qualifies as a BPV under the statute.***" (*Id.* at 18-19 (emphasis added).)

- "***The plain language of the BPV exception thus provides that if a party was a BPV of a security interest, who had no reason to be aware of the fraud at time of purchase, then the party's asset is excluded from forfeiture.*** The Government makes no attempt to address the 'at the time of purchase' language of the BPV exception, and thus, in light of Orienta's well-plead allegation of its security interests at the time of the HCG Purchase, the Motion to Dismiss should be denied." (*Id.* at 19 (emphasis added).)

### B.   Withdrawal of First Motion to Dismiss Because Factual Discovery Was Necessary.

Shortly after Orienta responded to the Government's first motion to dismiss, the Government replied to Orienta's response, *admitting that all of Orienta's claims needed further factual development through discovery* and withdrew the motion to dismiss as to Orienta:

- "Orienta, in its opposition to the Government's motion to dismiss, ***highlights certain issues necessitating further factual development through discovery***, and adjudication thereafter, ***rendering judicial disposition at the front end unavailable***."

- "[W]hether Orienta is entitled to claim status as a ***bona fide purchaser for value***, the Government agrees at this point that ***the factual record needs to be developed further***."

- "***[F]urther factual development and adjudication will be necessary*** on several points."

- "***Orienta raises issues of law and fact*** concerning whether it permitted and/or authorized the transfer of the forfeiture Asset in February 2015[.]"

- "***[F]actual issues also exist*** as to whether, at the time of its initial purchase in May 2012, Orienta had reason to know of Swartz's fraud and potential forfeiture."

- "***[O]ther factual issues related to the formation of Orienta and the funds it extended to Swartz need[] to be further examined during discovery, . . .***"

---

[2] Knowledge and awareness is a classic disputed issue of fact.

(Dk 117, Gov't's Reply to First Mot. to Dismiss at 1-5 (emphasis added).)

After filing the first motion to dismiss, the Government asked the Court to "withdraw its motion to dismiss as it pertains to Orienta, and further move[d] for an order of discovery." (*Id.* at 5.) The Government then asked the Court to allow an interlocutory sale of the Asset despite the pending forfeiture proceedings concerning the Asset. (Dk 120, Mot. for Sale.)

The Government further acknowledged its awareness of Orienta's BFP claim as evidenced by its May 18, 2018 Response in Opposition to Orienta's Motion for a Temporary Injunction. (Dk 132.) In that response, the Government stressed that further discovery on Orienta's claims (including BFP) needed to occur in order to avoid the entry of a TRO:

- "The government, ***out of an abundance of caution at the Rule 12(b)(6) pleadings stage, concluded that the prudent course was to conduct some discovery before further requesting that the Court decide in the government's favor***." (*Id.* at 11 (emphasis added).)

- "As the government set forth in its motion to dismiss the pending petitions, there are only two ways Orienta can prevail in the ancillary proceeding. First, Orienta may prevail if it proves by a preponderance of the evidence that it had superior vested title to the Asset prior to the government's vested interest. 21 U.S.C. §853(n)(6)(A). Second, ***Orienta may prevail if it proves that it is a bona fide purchaser for value and at the time of the purchase was without cause to believe the property was subject to forfeiture***. 21 U.S.C § 853(n)(6)(B)." (*Id.* (emphasis added).)

- "For purposes of responding to Orienta's motion for an injunction***, there are at least three reasons why Orienta cannot establish that it is bona fide purchaser for value***. . ." (*Id.* at 14.)

- "***The government intends to address the knowledge of Individual WR at the summary judgment stage of these proceedings, after further discovery***. Given the record as it now stands, it is unlikely Orienta can prevail as a BFP for value given its state of knowledge at the time of the original transaction in May 2012." (*Id.* at 19 (emphasis added).)

- "***Orienta does claim to have obtained a security agreement in the Assets owned by Swartz*** by May 2013, see Dk No. 43, pp. 7-8, but by this point Orienta could not have been a BFP because it cannot establish that it did not have reason to know of Swartz's fraud and potential forfeiture. Moreover, ***although Orienta may rest on its petition's pleading at the Rule 12(b)(6) stage***. . ." (*Id.* at 20, n 4. (emphasis added).)

To convince this Court to order an interlocutory sale of the Asset, the Government, in its reply to Orienta's opposition, argued:

> In light of the issues raised by . . . Orienta, the government will be serving interrogatories (that go to the heart of the ownership interests claimed), make requests for admissions, will request production of documents, and request depositions. ***Following discovery, it is likely that the parties will file their respective dispositive motions, and then wait for a determination by the court of the ownership of the Asset***. It is certain that the matter will take a matter of months, if not a year, to resolve. (Dk 136 at 9 (emphasis added).)

    ***C.   The Court Acknowledges Orienta's BFP and Superior Interest Claims and Accepts the Government's Position***. On August 9, 2019, the Court resolved the then-pending motions by granting the Government essentially all of the relief it requested: a dismissal of SFT, CT, and CCPF's petitions; allowing the interlocutory sale to proceed; and ordering Orienta's petition to proceed past the pleading stage and into discovery. (Dk 187, Order at 28-29.)

The Court granted the Government's request for an order of discovery on Orienta's claim, ruling that "[t]he §853 petition filed by Orienta Investors, LLC remains for discovery." (*Id.* at 28.) The Court accepted the Government's representation that Orienta's petition could not be resolved on the pleadings: "[a]ccording to the Government, the ancillary proceeding necessary to adjudicate the remaining claim by Orienta will be complex and is likely to take an extended period of time." (*Id.* at 24.) The Court also acknowledged Orienta's rights in the Asset and to proceeds of any interlocutory sale, which the Court found to weigh in favor of allowing the interlocutory sale to proceed. (*Id.* at 26.) It being a foregone conclusion that Orienta had a well-defined interest in this case and its claim could not be resolved on the pleadings, the Court allowed Orienta to file a response setting forth different or additional proposed terms for any interlocutory sale. (*Id.* at 29.)

Consistent with the Court's ruling, the Government requested that the Court permit discovery, and the Government's counsel swore in an affidavit that "the government is in agreement that ***discovery is necessary*** to resolve [Orienta's] claim to its ownership interest in the

proceeds of the sale of the [Asset], *which is a disputed issue of fact in this proceeding*." (Dk 212-2, at 2 (emphasis added).) The Court granted that request on October 18, 2019. (Dk 216.)

    **D.   The Government Changes its Course and Files Second Motion to Dismiss.** The sale of the Asset closed at the end of 2019 or the very beginning of 2020. (*See* Dk 227-229.) For the next several months, the parties engaged in settlement discussions. Though settlement did not occur, both parties agreed that discovery was necessary to resolve Orienta's claims. (Dk 230 at 1-2; Dk 232 at 2.) The Government represented to the Court that it "expects the *discovery to be voluminous* and anticipates using all available civil discovery tools . . . *rendering a three-month discovery process unrealistic*." (Dk 230 at 1-2 (emphasis added).)

    Orienta then propounded discovery requests on the Government. After months of delays, on the day the Government agreed to finally provide responses, the Government refused to provide any discovery and filed its Second Motion to Dismiss, attempting to revive the same arguments from its first motion to dismiss that were too factual for "judicial disposition at the front end." (*See* Dk 248; Dk 117 at 1-5.)  The Second Motion to Dismiss (Dk 248) alleged for the first time that Orienta's Petition was procedurally deficient but correctly noting that the Petition was subject to the liberal pleading requirements of Rule 12(b). The Government argued: "Orienta has not alleged a plausible claim that its interest vested prior to the Government's interest pursuant to Section 853(n)(6)(A)"; "Orienta has not alleged . . . that it is a bona fide purchaser without knowledge that the Asset was subject to forfeiture"; and "Orienta has no standing to assert an equity interest in the asset." (*Compare* Dk 248 at 17-25, *with* Dk 106 at 2, 36-40.)

    The Government did not explain in its second motion why Orienta's claims suddenly required no factual development and could be resolved on the "front end." (Dk 248 at 17-25.) The Government's motion also failed to explain why discovery was no longer necessary, despite

numerous filings—including a sworn affidavit—representing that discovery is necessary and expected to be time consuming. (*See id.*)

Two days after the Government filed its second Motion to Dismiss, on July 24, 2020, Orienta submitted a letter to this Court expressing shock over this maneuver, pointing out numerous instances where the Government said Orienta's claims warranted factual discovery and benefited from this course of action in obtaining an interlocutory sale order. (Dk 249.) The Government then filed a letter with the Court, conceding, "[i]n the original motion to dismiss, the Government did not argue, as we do now, that Orienta never pleaded an ownership interest as a bona fide purchaser for value . . . without cause to believe that the property was subject to forfeiture, pursuant to [Section] 853(n)(6)(B)." (Dk 250 at 1.)

The Government's second Motion to Dismiss contained a lengthy "factual background" section, with numerous disputed, highlighting the need for discovery. (Dk 248 at 7.) For example, the Government listed factual claims from before 2009 that it had never permitted Orienta to test through discovery. (*Id.* at 8-10.) No discovery whatsoever has been provided regarding control or ownership of the Asset prior to 2009-despite Orienta's requests for same.

Additionally, the Government argued that after February 2015, the Asset was transferred to Focus Franchising Inc. and later to other entities to which Orienta lacked a security interest. (*Id.* at 13-15.) This is contradicted by trademark filings, which show that Jreck Holdings, LLC (later renamed to Focus Acquisitions, LLC) continuously owned the Asset until it was seized by the Government who then moved the Asset to another entity.[3] The Government also argued that one

---

[3] *See* Dk 253-1 (Kessler Decl., Exhibit C), showing that the trademarks were owned by Jreck Holdings, LLC, later known as Focus Acquisitions, LLC, until improperly assigned to Focus Franchising Inc. by the Government without authorization and legal effect in 2018, well after Swartz pleaded guilty and the Government seized the Asset). Even though this case had not yet arrived at the summary judgment stage and Orienta was not required to produce evidence to defeat a motion to dismiss, Orienta submitted considerable evidence in connection with its petition showing that the SFT owned 70% of the asset, not Swartz, and that HCG owned the other 30% of the Asset at the time of Orienta's acquisition of HCG's interest. (*See* Dk 253-1 Kessler Decl., Exhibit A; *see also* Exhibit D, compiling the documents

of Orienta's members had knowledge that the Asset might be subject to forfeiture, but this is contradicted by record evidence,[4] and is a factual matter that should not be resolved on a motion to dismiss. The Government's assertion that the Defendant owned the Asset instead of the SFT is also contradicted by substantial record evidence,[5] and not appropriate for a motion to dismiss.

On September 2, 2020, Orienta filed its Response in Opposition to the Second Motion to Dismiss. (Dk 253). On September 16, 2021, the Government filed its Reply. (Dk 255.) The Government then **_for the first time, alleged a heightened pleading standard_**. In response, Orienta asked to file a sur-reply to refute this, which was denied—and this Court subsequently dismissed Orienta's Claim Petition in its entirety with prejudice on January 7, 2021. (Dk 256, 259.)

## LEGAL STANDARD

When seeking review of an order dismissing an ancillary forfeiture proceeding filed pursuant to Rule 32.2(c) and 21 USC § 853(n) through a motion for reconsideration, courts apply the standards under Federal Rules of Civil Procedure 59(e) and 60. *See, e.g., U.S. v. Bennett,* 2004 WL 829015 (S.D.N.Y. Apr. 15, 2004); *In re Bennett,* 2007 WL 2480524 (N.D.N.Y.Bankr. Aug. 28, 2007). Under Rule 59(e), a prior ruling will be reconsidered and vacated if necessary to remedy a clear error of law or to prevent manifest injustice. *Munafo v. Metropolitan Transp. Auth.* 381 F.3d 99 (2d Cir. 2004). Clear error and manifest injustice occur when a court overlooks controlling decisions of law and the overlooked decisions are reasonably expected to alter the conclusion reached by the court. *Shrader v.*

---

that were filed with Orienta's amended claim petition and Exhibit E, compiling the documents filed with Orienta's supplement to its appendix reflecting its purchase of its interest in the Asset from HCG.)

[4] Considerable evidence shows Orienta's due diligence and that its members were unaware of Swartz's criminal activity related to or in any way connected to the Asset. (Dk 177-49 at FA-000360, FA-000366, FA-000368-72, FA-000379, FA-000383-86, FAA-000388, FA-000390, FA-000398-99; Dk 177-51 at FA-447-58.)

[5] Substantial evidence shows SFT legitimately owned 65% of the Asset, in contravention of the Government's assertion that Swartz asserted dominion and control over the Asset. (*See* Dk 253-1 Kessler Decl., Exhibit A; *see also* Exhibit D, compiling the documents that were filed with Orienta's amended petition and Exhibit E, compiling the documents filed with Orienta's supplement to its appendix reflecting its purchase of its interest in the Asset from HCG.)

*CSX Transp., Inc.,* 70 F.3d 255 (2d Cir. 1995). Manifest injustice occurs where a court grants a remedy not requested by the parties without allowing briefing on the issue (*See, e.g., AARP v. U.S.E.E.O.C.*, 292 F. Supp. 3d 238 (D.C. 2017)), or where a court dismisses a case with prejudice without providing the parties an opportunity to amend or evaluating whether leave to amend would be futile (*see, e.g., United States ex rel. Carter v. Halliburton Co.,* 315 F.R.D. 56, 62 (E.D.Va. 2016), *aff'd,* 866 F.3d 199 (4th Cir. 2017)).

## LEGAL ARGUMENT

## I.   CLEAR ERROR TO DISMISS BONA FIDE PURCHASER FOR VALUE CLAIM.

### A.   *No Heightened Pleading Standard Under Controlling Law.* Respectfully, this

Court's reliance on cases outside the Second Circuit to apply a heightened pleading standard to Orienta's bona fide purchaser claim was clear error. The Second Circuit applies the liberal pleading standard in ancillary forfeiture proceedings.

The Second Circuit set forth the correct pleading standard as recently as 2018 in *United States v. Daugerdas*, 892 F.3d 545, 552 (2d Cir. 2018), stating: "On a motion to dismiss, a § 853(n) petition is evaluated on the same standard as a civil complaint on a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure." Likewise, in *Willis Management (Vermont), Ltd. v. U.S.*, 652 F.3d 236, 241-42 (2d Cir. 2011), the Court applied the same standard. Neither of these decisions nor any other Second Circuit decision applies a heightened pleading standard in ancillary forfeiture proceedings. Controlling precedent is clear—there is no heighted pleading standard in the Second Circuit. This accords with the language of § 853 itself:  "The provisions of this section shall be liberally construed to effectuate its remedial purposes."  21 U.S.C. § 853(o).

### B.   *Orienta's Petition Meets the Liberal Pleading Standard.* Throughout this case,

Orienta repeatedly alleged that it purchased an interest in the Asset for value and without knowledge of any of Swartz's criminal conduct or possible forfeiture, and held a security interest

in 100% of the Asset through secured notes, which is enough to survive a motion to dismiss. Orienta's petition alleged numerous facts showing it purchased an interest in the Asset for value, and it was fraudulently induced to do so, believing that Swartz's offer was legitimate and not tainted by any criminal activity. *See infra* at 2. Orienta attached as exhibits the secured notes evidencing that it held a security interest in 100% of the Asset, as well as various closing and due diligence documents with the seller, HCG, showing it had no reason to believe the Asset was connected to any criminal activity. (*Id.* at 3, n.1; Dk 43-1 to 43-14; Dk 253-1 (Kessler Decl., Exhibit A) (annexing the previously filed supporting documents to Orienta's Petition); *see also* Kessler Decl. Exs. D, E.) "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all ***purposes***." FED. R. CIV. P. 10(c) (emphasis added). A complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

The Government bore the burden to show Orienta did not sufficiently plead an interest in the Asset, which it did not do. *U.S. v. Mendez*, No. 07-CR-107 (ARR), 2008 WL 3874318, at *7 (E.D.N.Y. Aug. 19, 2008). Other courts have found that much less survives the liberal pleading standard under Rule 12(b)(6). *See, e.g.*, *U.S. v. Chowaiki*, 369 F. Supp. 3d 565, 576-77 (S.D.N.Y. 2019) (petitioner's allegations that it provided a satisfaction of debt in exchange for works of art enough to satisfy Rule 12(b)'s pleading standards); *U.S. v. Southland*, No. 5:04-CR-345 (NAM), 2006 WL 1007656, at *5 (N.D.N.Y. Apr. 18, 2006) (petitioner sufficiently alleged BFP status, although the claim neglected to use the words "bona fide purchaser" or cite to BFP statutory provision, but instead only alleged that the petitioner owned the vehicle and the convicted defendant did not have any interest in the vehicle, because the petitioner "may be able to, establish

he reasonably believed the [property] was not subject to forfeiture, and that he was therefore a bona fide purchaser for value"); *cf. U.S. v. Simmons*, No. 17-CR-127 (KMW), 2019 WL 3532113, at *6 (S.D.N.Y. Aug. 2, 2019) (suggesting that a "Dissolution Agreement . . . entered into at arm's length" in exchange for property would plausibly allege that the plaintiff was a BFP).

Orienta cited to the applicable BFP statute in its petition, 21 U.S.C. § 853(n)(6). But, in its second motion to dismiss, the Government argued, and this Court mistakenly agreed, that Orienta's mere failure to expressly cite sub-subsection § 853(n)(6)(B) or use the words "bona fide purchaser" dooms Orienta's claim. The Court cited two cases, neither of which directly confronted any BFP claim on the pleadings and are therefore not relevant. *See U.S. v. Ceballos-Lepe*, 977 F. Supp. 2d 1085, 1090 (D.Utah 2013) (general creditor "without a specific interest in the property ordered forfeit[ed]" and who could not identify any specific funds in which she could claim an interest). *Id.* Unlike *Ceballos-Lepe*, Orienta alleges and specifies at length the nature of its security interest and other interests in the Asset and provides documentary evidence of such. (Dk 43 at 1-13.) The second case cited is similarly inapplicable. In *United States v. Burge*, 829 F. Supp. 2d 664, 667 (C.D.Ill. 2011), the wife of a criminal defendant filed a claim to her husband's forfeited property but failed to sign the petition under penalty of perjury thus failing to strictly comply with § 853(n)(3). However, the court in that case nonetheless considered and found that she failed to allege a superior interest in the forfeited property.[6]

---

[6] The cases cited by the Court for the proposition that courts have dismissed petitions where the claimant failed to specify whether their claim was grounded in the "superior interest prong" or the "bona fide purchaser" prong, are similarly inapposite. In *U.S. v. Salkey*, No. 2:15CR146, 2016 WL 3766308, at *3 (E.D.Va. July 11, 2016) the petitioner failed to specify the grounds for relief, but the court did not dismiss the petition on that basis, and instead found that petitioner's sole conclusory legal assertion, with no factual assertions whatsoever, was insufficient. In *U.S v. Espada*, 128 F. Supp. 3d 555, 561 (E.D.N.Y. 2015), the court found in favor of the wife of the criminal defendant, who asserted a claim to her husband's forfeited pension. Because the court found she established her superior interest and did not allege BFP, the court did not need to reject that claim and there was no analysis of any insufficiency of a BFP claim or whether she intended to allege such a claim. In *U.S. v. Watson*, 549 F. Supp. 2d 961, 964 (W.D.Mich. 2008), although the court determined that a general reference in the claim petition to "§ 853(n) cannot reasonably be read to refer to § 853(n)(6)(B)", the court found that the petitioner had ample opportunities to raise its BFP claim at the

Indeed, ***courts in this Circuit are clear that a plaintiff need not cite the relevant statutory provision or particular words to sufficiently allege a claim***.[7] Thus, courts should not dismiss a complaint simply because it proceeds under the wrong theory "so long as it has alleged facts sufficient to support a meritorious legal claim." *Arar v. Ashcroft*, 585 F.3d 559, 594 (2d Cir. 2009). "*Factual allegations alone are what matter.*" *Id.* (emphasis added, internal quotations and alterations omitted).

In fact, the Sixth Circuit has held that a § 853(n) petitioner did not forfeit its bona fide purchaser argument where its petition did not raise the argument at all. In *U.S. v. Huntington Nat'l Bank*, the petitioner preserved its argument that it was a bona fide purchaser, even though it raised the argument for the first time at the forfeiture hearing. 574 F.3d 329, 334 (6th Cir. 2009). Orienta's argument is much stronger. Even if the petition did not use the bona fide purchaser language, it contained facts supporting the claims, and, Orienta asserted the claim in the response to the first Motion to Dismiss, in support of its Motion for TRO, and at every opportunity thereafter.

## II.   THE COURT CLEARLY ERRED IN ALLOWING THE GOVERNMENT TO ARGUE ORIENTA DID NOT STATE A CLAIM FOR BONA FIDE PURCHASER.

Immediately after the Government filed its Second Motion to Dismiss, arguing for the first time that Orienta did not state a bona fide purchaser claim, Orienta submitted a letter to this Court pointing out the numerous instances where the Government represented to this Court that Orienta's claims warranted factual discovery and that the Government benefited from this course of action

---

ancillary forfeiture hearing but failed to do so. Here, Orienta amply asserted BFP in numerous briefings and there was never a forfeiture hearing in this case. Similarly, in *U.S. v. Soreide*, 461 F.3d 1351 (11th Cir. 2006), the petitioner asserted a BFP claim in two claim petitions but raised an alternative claim (superior interest) for the first time at the summary judgment phase. The district court nonetheless considered petitioner's superior interest claims at the summary judgment hearing and found them to be meritless.

[7] *Sanchez v. Nassau Cty.*, No. CV177335JFBAKT, 2019 WL 2438652, at *7 (E.D.N.Y. Feb. 28, 2019) (statutory claim sufficiently alleged although the plaintiff did not reference the applicable statute giving rise to the claims), *rpt. and recomm. adopted*, No. 17CV7335JFBAKT, 2019 WL 1253283 (E.D.N.Y. Mar. 18, 2019); *Bembo v. Cty. of Niagara*, No. 13-CV-413JTC, 2013 WL 5288169, at *2 (W.D.N.Y. Sept. 18, 2013) (same).

in obtaining an interlocutory sale order. (Dk 249) Then, in its response to the second motion to dismiss, Orienta argued that the Government should be judicially estopped from arguing that Orienta did not state a claim for bona fide purchaser. (Dk 253 at 23-25). Respectfully, the January 7 Order reflects that this Court did not address this argument in dismissing the petition.

"While a motion for reconsideration under Fed. R. Civ. P. 59(e) does not properly serve as an occasion to repeat already-defeated arguments, in deciding such a motion a district court still may reconsider a hastily-made earlier ruling if, upon revisiting the non-prevailing party's arguments, the court concludes that it erred." *4 Pillar Dynasty LLC v. N.Y. & Co., Inc.*, 933 F.3d 202, 217 (2d Cir. 2019); *see also Vaughn v. Consumer Home Mortg. Co. Inc.*, 470 F. Supp. 2d 248, 258 (E.D.N.Y. 2007) (fact that arguments made by the plaintiffs were submitted before an earlier order did not preclude reconsideration of the order on the ground that the court overlooked the arguments; there was no indication in the prior order that the court considered the arguments presented); *see also Bill Diodato Photography LLC v. Avon Prods., Inc.*, No. 12 Civ. 847(RWS), 2012 WL 4335164 at *2 (S.D.N.Y. 2012) (Because the "Opinion failed to consider agreements that were properly before the Court at the motion to dismiss stage, Defendant's motion for reconsideration is granted."). This Court should reconsider this argument and vacate the dismissal of the bona fide purchaser claim on the basis that the Government was judicially estopped from arguing Orienta did not state that claim.

A.   ***The Judicial Estoppel Doctrine.*** The Supreme Court has held, under judicial estoppel, that where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him. *New Hampshire v. Maine,* 532 U.S. 742, 749 (2001).

"[C]ourts have uniformly recognized" that the purpose of the doctrine "is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment," and because judicial estoppel is designed "to prevent improper use of judicial machinery," it is "an equitable doctrine invoked by a court at its discretion." *Id.* at 749–50 (internal quotations omitted).

In evaluating whether to apply the doctrine of judicial estoppel, courts generally look for the existence of three factors: (1) a party's new position is "clearly inconsistent" with its earlier position, (2) the party seeking to assert this new position previously persuaded a court to accept its earlier position, and (3) the party "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *See New Hampshire,* 532 U.S. at 750–51. But the Supreme Court has made clear that these factors do not constitute "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel," and that "[a]dditional considerations may inform the doctrine's application in specific factual contexts." *Id.* at 751; *see also DeRosa v. Nat'l Envelope Corp.,* 595 F.3d 99, 103 (2d Cir. 2010) (noting that "[t]ypically, judicial estoppel will apply if" these factors are present). This Court has often adopted judicial estoppel.[8] Judicial estoppel also has been applied in ancillary forfeiture proceedings. *U.S. v. Liquidators of European Federal Credit Bank*, 630 F.3d 1139, 1149 (9th Cir. 2011) (government judicially estopped from arguing that claimants could not challenge forfeitability of funds in ancillary forfeiture proceeding).

---

[8] *See Lomascolo v. Otto Oldsmobile-Cadillac, Inc*., 253 F.Supp.2d 354, 360 (N.D.N.Y. 2003) ("When a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position in the same proceeding, especially if it is to the prejudice of his adversary."); *Holick v. Cellular Sales of N.Y., LLC*, No. 1:13-CV-738 (NAM/RFT), 2015 WL 12978186 at *1 n.2 (N.D.N.Y. July 30, 2015) (same); *U.S. v. Tanski*, No. 1:04-CV-714, 2006 WL 8452789 at *8 n.11 (N.D.N.Y. Jan. 11, 2006) (same).

**B.   All Criteria of Judicial Estoppel Are Met.**

1. <u>The Government's Positions Were Clearly Inconsistent</u>. As set forth at length in the background section above, the Government for years took the position that Orienta stated a claim for BFP only to deliberately change its position in the Second Motion to Dismiss according to the exigency of the moment. The Government's long-held position that Orienta stated a claim for BFP is clearly inconsistent with it new claim that Orienta did not state a claim for BFP.

Previously, the Government did not make this argument because this argument could not be maintained in good faith. Specifically, the Government stated that "whether Orienta is entitled to claim status as a bona fide purchaser for value, the Government agrees at this point *that the factual record needs to be developed further*." (Dk 117 at 3 (emphasis added).)  The Government then set forth precise issues of fact that precluded resolution of the BFP claim on the pleadings. (*Id.* at 3-5)  In other words, the Government consciously decided to withdraw a challenge to Orienta's BFP allegations because it could not in good faith maintain that argument given factual disputes that exist in this case precluding resolution on the pleadings. Yet its second motion to dismiss, without explanation, revived arguments that could not previously be maintained in good faith and were withdrawn without any of the factual development that the Government specifically required.

The Government also struggled to explain away the Court's reliance on the Government's representation in its order on the motion to dismiss that "the ancillary proceeding necessary to adjudicate *the remaining claim by Orienta will be complex and is likely to take an extended period of time*." (*See* Dk 187 at 24 (emphasis added).) The Government argued that this "remains accurate" particularly since Orienta and other claimants have a right to appeal any dismissal." (Dk 250 at 2 n.1.) But the Court nowhere mentions "other claimants," and "lengthy appeals" in its prior

order; rather, the Court relies on the Government's representation that the "claim by Orienta" remaining in the trial court will be lengthy and complex.

The Government also avoided entry of a TRO in Orienta's favor by acknowledging Orienta's BFP claim and asserting that "[f]or purposes of responding to Orienta's motion for an injunction, there are at least three reasons why Orienta cannot establish that it is bona fide purchaser for value . . ." (Dk 132 at 14, 19). The Government also convinced this Court that an interlocutory sale needed to be ordered because discovery on Orienta's claims, including the BFP claim, needed to proceed and that following discovery, the parties would file their respective summary judgment motions, thus, "[i]t is certain that the matter will take a matter of months, if not a year, to resolve."  (Dk 136 at 9).

2. <u>This Court Accepted the Government's Earlier Position</u>. Also as set forth in detail above, this Court accepted the Government's earlier position that Orienta stated a BFP claim:

- On August 9, 2019, the Court resolved the then-pending dispositive motions by granting the Government essentially all of the relief it requested: a dismissal of SFT, CT, and CCPF's petitions; allowing the interlocutory sale to proceed; and ordering Orienta's petition to proceed past the pleading stage and into discovery. (Dk 187, Order at 28-29.)

- The Court granted the Government's request for an order of discovery on Orienta's claim, ruling that "[t]he § 853 petition filed by Orienta Investors, LLC remains for discovery." (*Id.* at 28.) The Court, in its analysis weighing the propriety of an interlocutory sale, considered the stability of the Asset's value and the protracted nature of forfeiture litigation including Orienta's claims.

- Specifically, the Court accepted the Government's representation that Orienta's petition could not be resolved on the pleadings: ***"[a]ccording to the Government, the ancillary proceeding necessary to adjudicate the remaining claim by Orienta will be complex and is likely to take an extended period of time***."  (*Id.* at 24 (emphasis added).)

- The Court also acknowledged Orienta's rights in the Asset and the right to proceeds of any interlocutory sale, which the Court found to weigh in favor of allowing the interlocutory sale to proceed: "[e]ven if Orienta is able to clear away the various roadblocks to success on its petition that are detailed extensively in the Government's memoranda, Orienta's stake in the Asset is as a secured creditor and 35% equity member owed an additional $1.4 million in first priority debt. . . . There is absolutely no indication anywhere that the legally

17

required 'commercially reasonable' sale of the franchise would leave Orienta unpaid." (*Id.* at 26.)

- Being a foregone conclusion that Orienta had a well-defined interest in this case and its claim could not be resolved on the pleadings, the Court allowed Orienta to file a response setting forth different or additional proposed terms for any interlocutory sale by the Government. (*Id.* at 29.)  Given the Court's descriptive language in the Order regarding Orienta and its interest in the case, and the Court allowing Orienta to offer alternatives to the terms of sale, in addition to many other statements in the Order, the Court recognized Orienta's legal "standing" in this criminal forfeiture proceeding.

- Consistent with the Court's ruling, the Government requested that the Court permit discovery, and counsel for the Government swore, in an affidavit, that "the government is in agreement that ***discovery is necessary*** to resolve Petitioner's claim to its ownership interest in the proceeds of the sale of the [Asset], ***which is a disputed issue of fact in this proceeding***." (Dk 212-2, at 2 (emphasis added).)  The Court granted the Government's request on October 18, 2019. (Dk 216.)

3. <u>Unfair Detriment to Orienta</u>. Orienta will suffer unfair detriment if the Government is not estopped from taking the position that Orienta did not state a BFP claim. Orienta, which is an innocent party, has litigated this case for years under the impression that both the Government and this Court accepted that Orienta stated this claim. Years of litigation and its associated costs meet the unfair detriment standard. *See In re Joe's Friendly Serv. & Son, Inc.*, No. 8-14-70001, 2020 WL 3120288 at *10 (E.D.N.Y.Bankr. June 11, 2020); *China Shipping Container Lines Co. Ltd. v. Big Port Serv. DMC*, No. 15 Civ. 2006, 2019 WL 9362547 at *8 (S.D.N.Y. Jan. 15, 2019) .

## III.   THE COURT CLEARLY ERRED IN DISMISSING ORIENTA'S PETITION WITH PREJUDICE.

Again relying on non-Second Circuit cases, this Court dismissed Orienta's petition with prejudice on the grounds that the original 30-day filing deadline under § 853(n)(6) had passed.[9]

Respectfully, this is not the general rule, and the Second Circuit itself has permitted amendment

---

[9] Notably, the Government had earlier filed a Motion to Dismiss the Claim Petition of Swartz Family Trust on the grounds that it failed to meet the forfeiture statute's 30-day deadline for filing claims after notice of forfeiture: "The instant petition, filed August 31, 2017, is untimely by five and a half months." (Dk 85 at 10.)  Despite this failure to meet the strict requirements of §853(n)(2), this Court nevertheless ordered the Government to file a response to the Swartz Family Trust Claim Petition thereby ignoring the §853(n)(2) 30-day requirement. (Dk 100.)

outside of 30 days. While Orienta strongly believes it stated a claim, if this Court still disagrees, it should, at minimum, permit amendment of the petition. For instance, in *Daugerdas*, the Second Circuit found the petition did contain sufficient plausible allegations to sustain the petitioner's position but noted that, at oral argument, she claimed to be able to plead additional facts. 892 F.3d at 547. The Court allowed her to amend the petition, which obviously occurred far outside of the 30 days. *Id.* at 558.

As noted in a district court opinion, the Eleventh Circuit also allows amendment outside of 30 days. *U.S. v. Pegg*, No. 7:97–CR–30, 2000 WL 34612651 at *1 (M.D.Ga. Nov. 9, 2000). And, as set forth above, the Sixth Circuit allowed amendment of a petition by oral argument at a hearing which also occurred well outside the 30-day window. *Huntington*, 574 F.3d at 334.

Similarly, the court in *U.S. v. U.S. Currency, in the Amount of $103,387.27*, 863 F.2d 555 (7th Cir. 1988), found that the strict verification requirements of §853 were not met but nonetheless allowed amendment after the 30-day period. That court listed a string of cases finding that amendment is proper where the government is not prejudiced. The court discusses *U.S. v. One (1) Mercedes*, 651 F. Supp. 351 (S.D.Fla. 1987), which found that several factors guide courts in allowing amendment: (1) whether the claimant has advised the court and government of the claimant's interest before the claim deadline, and (2) whether the government would be prejudiced by allowing the late filing. *Id.* at 353 (citations omitted). Notably, the district court in *Mercedes* extended the time to file a claim, despite the claimant's failure to offer any reasons supporting the failure to file, because the government failed to show how it would be prejudiced by a late filing.

The *U.S. Currency, in the Amount of $103,387.27* court also cited to numerous cases regarding a petitioner's good faith effort to comply with the forfeiture statute, and held that "where the putative claimants have placed the court and the government on notice of their interest in the

property and their intent to contest the forfeiture, courts will grant extensions of time, recognizing both the good-faith effort put forth and the lack of prejudice to the government under such circumstances." *Id.* at 562.[10]

The cases this Court relies on are completely distinguishable, factually driven, and inapplicable here. For example. *U.S. v. Lamid*, 663 F. App'x 319, 325 (5th Cir. 2016), states that "[c]ourts have routinely held that the deadline in section 853(n)(2) is mandatory."  In *Lamid,* the criminal defendant's wife asserted a claim to forfeited assets and she partially settled her claims with the government which relinquished certain forfeited assets to her. Later, her son (also the son of the criminal defendant) filed a claim on behalf of his mother, purportedly pursuant to a power of attorney, signed by his father, not his mother. After the father's appeal, the government moved to dismiss the mother's claim on the grounds that her son lacked authority to bring the claim petition, and as such, the claim petition failed to meet the signing requirement of §853(n)(3). The Fifth Circuit agreed and found an amendment to be untimely. And, the case of *U.S. v. Strube*, 58 F. Supp. 2d 576, 584 (M.D. Pa. 1999), is not a case about amendment but merely discusses the strict thirty day time frame. As such, it is not applicable here where both this Court and the Government were well aware of Orienta's claims asserted over the course of this case for over three years throughout the course of this forfeiture case.

---

[10] Numerous other district courts throughout the country follow suit. *U.S. v. Sarabia-Ramirez*, No. 1:14-cr-00226 2019 WL 1493338 at *1 (E.D.Cal. April 4, 2019) (granting leave to amend out-side of 30 days where petitioner did not state a claim); *U.S. v. Chandler*, No. 1:18-CR-00079.2019 WL 1427556 at *4 (W.D.N.C. March 29, 2019) (petitioner's given numerous opportunities to amend petition for technical violations outside of 30 days); *U.S. v. Okonkwo*, NO: 6:14–cr–5–Orl–40GJK, 2016 WL 6984273 at *5 (M.D.Fla. Nov., 29, 2016) (dismissing with leave to amend out-side of 30 days where petitioner did not state a claim); *U.S. v. Vithidkul*, No. DKC 12–624, 2014 WL 1515130 at *1, *2 (D.Md. April 16, 2014) (Petitioner permitted to amend outside of 30 days where petition devoid of factual detail and permitted to amend a second time to cure failure to verify); *U.S. v. Glenn*, No. CR–10–084–RAW, 2012 WL 3775965 at *2 (E.D.Ok. Aug. 28, 2012) ("there is no clear rule on whether or not to allow a petitioner to amend beyond the thirty-day period provided in § 853(n)(2)").

In dismissing a claim under the liberal pleading standard, this Court should instead look at whether amendment would be futile. *Daugerdas*, 892 F.3d at 553 ("To make clear why re-pleading would not be futile, it is necessary to understand the procedural interests at stake."). Amendment would not be futile here. Although the Court stated that Orienta's BFP claim, even if considered, would be subject to dismissal because Orienta was a shareholder with no direct interest in the Asset, the fact is that the Asset sold is comprised mostly of the trademark which was never moved and owned by the same entity in which Orienta had a direct stake. It was the Government that moved it once they took over the management of the enterprise.

As in *Daugerdas*, *see id.* at 553 n.7, this Court should excuse any failure of Orienta to seek leave to amend before now. *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 89–90 (2d Cir. 2018) (permitting plaintiffs to replead who had not sought leave to replead below). Orienta should be permitted to amend its petition because it had little reason to seek amendment to its petition until the Government first argued that a heightened pleading standard applied in it reply to the response to the second Motion to Dismiss. Orienta sought leave to file a sur-reply to address this newly argued, and incorrect, standard of review. However, this Court did not allow the sur-reply. Orienta would have sought leave to amend in the sur-reply in an abundance of caution due to the new argument of a heightened pleading standard.

## IV.   THE COURT CLEARLY ERRED IN DISMISSING ORIENTA'S "SUPERIOR INTEREST" CLAIM WHERE THERE IS A FACTUAL DISPUTE.

This Court erroneously considered the Government's factual arguments about what Orienta must or cannot "show." (Dk 248 at 17, 18). In fact, Orienta need not have "shown" anything at the pleading stage. *See id.* In dismissing Orienta's superior interest claim, the Court looked outside the pleadings and essentially transformed the Government's motion into one for summary judgment without an opportunity for Orienta to conduct discovery, which is not proper. *See Glob.*

*Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (noting that summary judgment is "the proper procedural device to consider matters outside the pleadings, such as facts unearthed in discovery, depositions, affidavits, statements, and any other relevant form of evidence").

Dismissal pursuant to the Government's second motion to dismiss must be reconsidered because it was based on facts that existed outside of the four corners of Orienta's petition and in advance of discovery. *See Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) ("It is well settled that in ruling on [a motion to dismiss], a district court may consider the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." (internal quotations omitted)).

The Government relied on its interpretation of "facts" in Swartz's criminal case to create a record—outside the four corners of Orienta's Petition—to seek dismissal of Orienta's superior interest claim, for which there is no dispute as to Orienta's stating such a claim in its petition.[11] This Court mistakenly agreed, finding that Swartz's plea to wire fraud that was alleged to have begun in 2005, was essentially law of the case as to Orienta, a third party petitioner.[12]  In doing so, this Court relied on *U.S. v. Capoccia* for the proposition that:

---

[11] Even the Government's allegation that Swartz's fraud began in 2005 is inconsistent with the Swartz Information (*see* Dk 2 at 1, ¶ 5) and the FBI affidavit in support of the Government's application for a restraining order (*see* Dk 16-1 at 3, ¶ 7) both of which allege that Swartz's fraud began in 2009.

[12] "Law of the case" as to factual determinations being made on a ruling on a motion to dismiss before discovery has taken place was erroneously applied here. *See, e.g., Dorsett-Felicelli, Inc. v. Cty. of Clinton*, No. 1:04-CV-1141 LEK/RFT, 2013 WL 3897578, at *3 (N.D.N.Y. July 29, 2013) (collecting cases showing that rulings on pre-discovery motions, including those involving injunctive relief, are not the law of the case for subsequent litigation); *Orafan v. Goord*, No. 00CV2022(LEK/RFT), 2003 WL 21972735, at *5 (N.D.N.Y. Aug. 11, 2003) ("As Judge Kahn's prior Order was made on a motion to dismiss, the scope of the inquiry was necessarily limited to questions of law, and accordingly, the law of the case would apply to all the rulings contained therein."). The Government's second motion to dismiss was not only premised on alleged facts outside of Orienta's petition but was also premised on a misapplication of the "law of the case" doctrine, which is a narrow doctrine applied in very specific circumstances not present here.

22

The applicable forfeiture statute makes clear that, if necessary, a petitioner's claim to an interest in forfeitable property can proceed all the way through discovery and to an evidentiary hearing. 21 U.S.C. § 853(n)(5). But as the Second Circuit has observed, in the forfeiture context it would be absurd to require the Government "to reintroduce at a post-trial hearing potentially large portions of its case from the guilt phase of the defendant's trial to a judge or jury that has already seen and considered the relevant evidence." *United States v. Capoccia*, 503 F.3d 103, 109 (2d Cir. 2007).

Significantly, *Capoccia* does not involve an ancillary proceeding under the forfeiture statute or the determination of a third-party claim. Rather, the criminal defendant in *Capoccia* contested use of evidence from defendant's criminal trial at the forfeiture hearing. The court found that that district court was authorized to establish the forfeitability of seized assets based not only on evidence adduced at the defendant's forfeiture hearing, but also on evidence adduced during his trial. *Id.* at 105. *Capoccia* is inapplicable to a claim of a third-party claimant in an ancillary forfeiture proceeding and fails to support the proposition that a factual record in a criminal case can form the basis for dismissal of well-pled third-party claim petitions.

There are numerous disputed issues of fact that should have precluded this Court from resolving Orienta's claim under 21 U.S.C. § 853(n)(6)(A) as a matter of law. *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 45 (2d Cir. 2019) ("Summary judgment should be denied where there are genuine issues of material fact that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." (internal quotations omitted)). Orienta's allegations of its superior interest in the Asset were sufficiently stated in the Petition, warranting further discovery, at minimum.

First, the Government's argument that it was Swartz, and not certain of the Jreck companies, that held the Asset is unsupported by law or logic and, at a minimum, warrants fact-finding through discovery. Second, the Government ignores that Orienta had valid security interests in Swartz's assets in his individual capacity. Further, neither Swartz nor the Government

had an interest in the Asset with the allegations and evidence in this case showing that Swartz's fraud resulted in the Asset being a constructive trust rendering Orienta's claim to the Asset superior to Defendant's claim. *See United States v. Lesak*, No. 07 CR. 0396 (GEL), 2009 WL 1788411, at *5 (S.D.N.Y. June 23, 2009) (a criminal offender's fraud gave plausible inference that defrauded party's interest in property was superior to offender by way of a constructive trust, and therefore the defrauded party's claim could not be dismissed for lack of standing).[13]  Simply put, Orienta's failure to obtain any proceeds from a sale of the Asset would unjustly enrich SFT, which owed fiduciary duties to Orienta and therefore would justify the Court imposing a constructive trust that would render Orienta's interest in the Asset superior to the Government's interest. *See Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 362 (2d Cir. 1999) (describing elements of a constructive trust).

This Court erred in rendering a factual determination that Orienta could "not show that any of its own funds (which came into play in 2012, or at best 2009) are traceable to the 2002 or 2005 transactions" in light of Orienta's well-pled allegations. (Dk 259 at 19). There is considerable evidence showing that SFT owned the Asset, not Swartz individually, and as such, Orienta should have been allowed to test the Government's claims through discovery. Contrary to well-established legal principles, this Court decided the factual merits of Orienta's superior interest claim on a motion to dismiss.

## CONCLUSION

For the foregoing reasons, Orienta respectfully requests that the Court grant this motion to alter or amend or reconsider, vacate the order dismissing Orienta's petition, and order that

---

[13] A constructive trust is sufficiently alleged here and too factual to resolve on a motion to dismiss, given Orienta's status as a minority owner of Jreck Holdings, LLC and the Asset, and the clear breach of fiduciary duties owed to Orienta by the majority owner of Jreck Holdings, LLC and the Asset. *See, e.g., Weidberg v. Barnett*, 752 F. Supp. 2d 301, 307 (E.D.N.Y. 2010) (observing that "members and managers of limited liability companies owe fiduciary duties not just to the LLC, but also directly to the members of the LLC").

discovery may proceed, or, in the alternative, grant Orienta leave to file an amended petition, and

grant Orienta such further relief that is just and proper.

Dated: New York, New York
      January 21, 2021

                                  Respectfully submitted,

                                  **AKERMAN LLP**

                                  */s/ Scott M. Kessler*
                                  Scott M. Kessler
                                  520 Madison Avenue, 20th Floor
                                  New York, NY 10022
                                  Tel.: (212) 880-3800
                                  Fax: (212) 905-6411
                                  Email: scott.kessler@akerman.com

                                  *Attorneys for Orienta Investors, LLC*

25

## <u>CERTIFICATE OF SERVICE</u>

I, Scott M. Kessler, certify that on January 21, 2021, a true and correct copy of the foregoing document was filed through the CM/ECF system, which caused notice to be sent to all counsel of record.

*/s/ Scott M. Kessler*
*Attorney for Orienta Investors, LLC*